## Rockcastle Mining, Lumber & Oil Co. v. Isaacs.

(Decided December 7, 1910.)

### Appeal from Jackson Circuit Court.

Deed to Land—Quantity Conveyed—Evidence Considered—Conclusion.—The question in this case is whether a 50 acre or a 60 acre tract of land was conveyed to appellant. Held, that upon a careful reading of the deeds, and of the testimony of the surveyors who testified for appellant, taken in consideration with the vague and uncertain testimony of the witnesses who testified for appellee, we are satisfied that the land conveyed to appellant was the 60 acre tract, and not the 50 acre tract, as claimed by appellee. In each of the deeds in the chain of title from Isaacs to Wells and in the deed from Wells to Baker one of the boundary lines is, "thence west with the ridge to the old fifty acre survey made by James Isaacs." This description negatives the idea that there was an attempt to convey the James Isaacs' 50 acre survey.

C. C. WILLIAMS and E. E. HOGG for appellant.

A. W. BAKER for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

Charging that it was the owner and in possession of a tract of land located in Jackson county, consisting of about 60 acres, and that appellee, Wm. Riley Isaacs, had entered upon the land and cut certain timber therefrom, and would continue to do so unless restrained by the court, appellant, Rockcastle Mining, Lumber & Oil Company, brought this action to quiet its title to the land and to enjoin appellee from further trespassing. Appellee denied appellant's title, and pleaded title in himself. The affirmative allegations of the answer were denied

by reply. Upon submission of the case the court adjudged that appellee and the heirs of Elizabeth Isaacs were the owners of the tract of land in controversy. From that judgment this appeal is prosecuted.

As both appellant and appellee claim through Hezekiah Isaacs, it will be necessary to consider the title only from the time that it reached him.

The appellant made-out its title as follows: On February 1st, 1875, Hezekiah Isaacs conveyed the land to James Bowman by deed of record in the Jackson county clerk's office. On Feburary 10th, 1878, James Bowman conveyed the land to Elizabeth A. Church, the deed being recorded on August 16th, 1886. On August 19th, 1886, Elizabeth A. Church and her husband conveyed to John W. Wells. This deed was recorded on February 8th, 1887. On the same day John W. Wells and wife conveyed to Alex. Baker by deed which was recorded on February 9th, 1887. On July 28th, 1887, Alex. Baker conveyed to I. T. West by deed which was recorded on January 17th, 1889. On January 17th, 1889, J. T. West conveyed the land to appellant by deed which is of record in the Jackson county clerk's office. Two surveyors testified that the land in controversy was covered by each of the deeds in appellant's chain of title.

Appellee not only attempted to show title in himself, but also attacked certain deeds in appellant's chain of title, on the ground that they did not cover the land in controversy and were as a matter of fact never executed and delivered by the parties. Appellee testified that he claimed he and his brothers owned the land in controversy. In answer to the question "What do you in fact know in regard to Hezekiah Isaacs' conveying this land claimed by you to your mother, Elizabeth Isaacs?" he said "I know that it knocked me out of a home by her swapping that dower to this tract of land. I do not know that my mother claimed that she had a deed for this land that I have seen a good many times, and claimed it to be a deed made for this land that she swapped her dower to, the reason I make this statement this way, I can neither read nor write." The witness further testified that he could not find the deed on record, but he knew his mother had a deed for it and claimed to own it. He claimed, not the 50-acre tract, but the 60-acre tract adjoining the 50-acre tract. The deed must have been made in 1869 or 1870. Couldn't tell whether there was a witness to the deed or not. The deed from

James Bowman to Elizabeth A. Church, made on the 10th day of February, 1878, covered the land in controversy, with the exception of 7 acres.

George W. Isaacs, a witness for appellee, testified, in substance, as follows: He was a brother to Hezekiah Isaacs. Hezekiah Isaacs sold and conveyed the 60-acre tract to Elizabeth Isaacs. Elizabeth Isaacs had a lifetime dower in the old place. Hezekiah Isaacs traded the 60-acre tract for her dower in the old place and made her a deed to it. The witness was present when Jim Woods, the clerk, took acknowledgment of Hezekiah Isaacs and wife to the deed in McKee. It was about the year 1869 or 1870. The deed was not put to record.

Margaret Jane Alcorn testified that she lived on Poplar Lick Branch. Elizabeth Isaacs was the midwife attending at the birth of one of her children. Elizabeth Isaacs had a deed there, and tried to get Anderson Lakes to read it. He couldn't, and he and her father made it out and said it was as good a deed as ever was. Witness tried to get her husband to read it, but he could not.

Ambrose Brockman testified that he lived near the 60-acre tract in controversy and the James Isaacs' survey of 50 acres, and he never heard of anybody claiming it except Elizabeth Isaacs. John W. Wells, who, the record shows, conveyed to Alex. Baker, claims that he never owned the 60-acre tract, but that he bought the 50-acre tract from a man by the name of John Mutters. He sold this tract to Andy Harrison, but no title papers passed between him and Harrison. Harrison sold the land to Alex. Baker. When the sale was made Harrison pointed out the boundary lines of the 50-acre tract of land. On cross-examination this witness testified as follows: "Q. Did Mr. Baker and George Isaacs take you out of the room where you were giving your deposition and have a talk with you before you made the statement that you never deeded said land to Alexander Baker on February 8, 1887? A. Yes, sir. Q. What do you know about the 60-acre boundary claimed by plaintiff company and Wm. Riley Isaacs, except what uncle George Isaacs told you yesterday and what Bill Isaacs told you heretofore? A. That is about all I know about it; just what they said to me."

Andy Harrison testified that he never bought the tract of land in controversy of Wells, but he did buy the 50-acre tract of land patented as the land of James

Isaacs. Alex. Baker bought this tract from witness. No title papers passed between him and Baker. Whether or not any passed between Wells and Baker he did not know.

Emma Wells, the wife of John W. Wells, testified that she never signed or acknowledged a deed to Alex. Baker.

For appellant, Alex. Baker testified that he bought the land in controversy from Andy Harrison, but that John W. Wells made the deed and gave it to him. Wells also delivered to witness a deed from James Bowman to Elizabeth A. Church, and a deed from Elizabeth A. Church to him. The evidence also shows that the acknowledgment taken by John Farmer, deceased, ex-county clerk of Jackson county, was in the latter's handwriting.

Much of the evidence of appellee was incompetent. It consisted mainly of statements that the witnesses understood that Elizabeth Isaacs claimed the land. Even the evidence as to the making of a deed by Hezekiah Isaacs to Elizabeth Isaacs is vague, indefinite and uncertain. It depends upon the uncertain recollection of those who testified to the fact that the deed was made and what its contents were after a lapse of almost forty years. Even if Hezekiah Isaacs made a deed to Elizabeth Isaacs, it is doubtful in the extreme if it included the land in controversy. But, assuming that such a deed was made, it was never put to record and knowledge of its existence was confined to very few persons. The appellee and his brothers, as heirs of their mother, never claimed any right under the deed until the lapse of a great many years; and this, too, when appellee lived near the land for about twenty years. As appellant has pleaded that it was an innocent purchaser for value, without notice, of the land in controversy, and as the evidence conclusively shows that appellant had no notice of the deed referred to, the deed cannot prevail against appellant's title.

But it is claimed by appellee that he has shown conclusively that one of the deeds in appellant's chain of title was not as a matter of fact signed and acknowledged by the alleged grantors, and that the parties purporting to convey owned, not the 60-acre tract of land in controversy, but the James Isaacs' survey of 50 acres adjoining the 60-acre tract. To overcome a deed which purports to be signed and acknowledged by the grantors

and is thereafter put to record, the evidence must be clear and convincing. In this case Wells swears that no title papers passed to him and that he executed no deed to Baker. The record shows that a deed had been made to Wells and that he had made a deed to Baker. The record, therefore, tends to contradict Wells in two respects.

Furthermore, Baker swears that Wells did execute the deed, and that Wells delivered to him the deed from Bowman to Church and from Church to himself. In addition to this, Wells, himself, admits that all he knew about the matter was what had been told by George and Bill Isaacs. If record titles could be overcome by the uncertain testimony of such ready and willing witnesses as have testified in this case, such titles would be practically valueless. As said before, in order to show that a deed, which purports to have been signed and acknowledged by the grantors and is then put to record, was not signed by the grantors, the evidence must be clear and convincing. The evidence for appellee does not come up to this standard.

While Wells, Andy Harrison and others claim that the land which they owned was the 50-acre James Isaacs' survey and not the 60-acre tract in controversy, the deeds of record show the contrary. In each of the deeds in the chain of title from Hezekiah Isaacs to John W. Wells, and in the deed from Wells to Alex. Baker one of the boundary lines is "thence west with the ridge to the old fifty-acre survey made by James Isaacs." This description negatives the idea that there was an attempt to convey the James Isaacs' 50-acre survey. In several of the deeds there is reference to the fact that the land is the same as was conveyed in the prior deed.

Upon a careful reading of the deeds, themselves, and of the testimony of the surveyors who testified for appellant, taken in consideration with the vague and uncertain testimony of the witnesses who claimed that it was not the 60-acre tract, but the 50-acre survey, which was conveyed, we are satisfied that the land in controversy is the same as that conveyed in each of the deeds embraced in appellant's chain of title, and that appellant has shown itself entitled to the land. That being true, it follows that the trial court erred in giving judgment in favor of appellee and the other heirs of Elizabeth Isaacs.

. Judgment reversed and cause remanded, with directions to enter a judgment in conformity with this opinion.