## Stephens, et al. v. May, et al.

(Decided March 19, 1914.)

### Appeal from Floyd Circuit Court.

1. Judgment— Evidence— Preponderance—Error.—Where a case turns on a question of fact, and the evidence is conflicting and upon a consideration of the whole case the mind is left in doubt, the finding of the chancellor will not ordinarily be disturbed, yet where the evidence preponderates on one side or the other in such a way as to convince the court that the chancellor has erred, his judgment will be reversed.

2. Forgery—Evidence.—In order to establish a case of forgery the evidence should be clear and convincing.

3. Deeds—Cancellation—Forgery—Evidence.—In an action by plaintiffs to cancel a deed on the ground of forgery, evidence examined and held to sustain the charge of forgery.

WILL H. LANE and D. O. HARMON for appellants.

JAMES GOBLE and MAY & MAY for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

William D. Stephens died intestate, a resident of Floyd County, Kentucky, and left surviving him a widow and several children. A. L. Stephens was one of the children. In addition to the interest which he inherited, he purchased the interest of his sister, Cynthia Ratliff, formerly Stephens. In the division of the land this interest was by mistake allotted to Elizabeth Allen, another sister. Elizabeth Allen conveyed this interest to A. L. Stephens. The deed was lost and never recorded. Thereafter Elizabeth Allen and her husband executed and delivered to A. L. Stephens another deed for said interest.

On August 3, 1901, a deed purporting to be signed and acknowledged by Alex Stephens and Angeline Stephens, his wife, was delivered to Eli Stephens. This deed was recorded in the Floyd County Clerk's office, but the signatures of the grantors were omitted. Subsequently Eli Stephens, son of W. D. Stephens, conveyed his own interest and the interest acquired by the aforesaid deed from Alex Stephens and wife to B. L. C. May. Alleging that the deed of August 3, 1901, to Eli Stephens was a forgery, A. L. Stephens brought this action against Eli Stephens and B. L. C. May to have the deed canceled, and to recover the land purporting to be conveyed thereby. Afterwards Angeline Stephens, wife of A. L. Stephens, was made a party plaintiff. The chancellor refused to grant them the relief prayed for, and they appeal.

It appears that Eli Stephens entered into an agreement with B. L. C. May, by which he agreed to sell to the latter his own interest in his father's estate, and also the interest of A. L. Stephens, provided he could purchase it. He claims to have had some correspondence with A. L. Stephens, and that A. L. Stephens agreed to make a conveyance for the sum of $50. The money was sent in an envelope addressed to A. L. Stephens at Henrietta, Oklahoma. Thereafter a return card purporting to be signed by A. L. Stephens was received. This was soon followed by the deed of August 3, 1901. Thereupon Eli Stephens conveyed his own and the interest thus purchased to May, for the sum of $185 cash.

Both A. L. Stephens and his wife, Angeline Stephens, left Kentucky in the year 1889, and since that time have resided in Indian Territory and Oklahoma. On August 3, 1901, the date of the deed in controversy, they lived in the country, near Henrietta, Oklahoma Territory.

They each swear that they never signed, acknowledged or delivered the deed. They further say that the signatures to the deed are not in their handwriting. The signature of Angeline is spelled "Anjaline." Mrs. Stephens says that she never spelled her name in that way. The original deed is before us. There is also in the record the deposition of the notary, James A. Scott, who took the acknowledgment. The certificate recites that "the foregoing deed of conveyance from Alex Stephens and his wife Anjaline Stephens, to Eli Stephens was on the 3rd day of August, 1901, produced to me in said Northern district, and acknowledged before me by Alex Stephens and his wife Anjaline Stephens, party grantor —thereto to be his and her act and deed." Mr. Scott testified that the words "& his wife Anjaline Stephens" in both places in the certificate, and also the words "& her" near the end of the certificate, are not in his handwriting. He also says that the deed was presented to him by a man who represented himself as Alex Stephens. No woman accompanied him at the time, and he did not take the acknowledgment of any woman. Though the transaction took place several years before, he says he is confident that the man who presented the deed to him was not Alex Stephens, whom he saw for the first time when giving his deposition. The deed itself clearly shows that the words "& his wife Anjaline Stephens" as they occur in both places, and the words "& her" are not in the handwriting of Mr. Scott. In addition to these facts, several witnesses testify that in their opinion the signatures to the deed are not in the handwriting of the grantor. A. L. Stephens always wrote his name "Alexander L." or "A. L.", and nexer "Alex" Stephens. Alex Stephens also says that he never received the $50 purchase money, nor did he sign any return post card acknowledging receipt of same.

For defendants B. L. C. May testified that he was well acquainted with the handwriting of A. L. Stephens, and in his opinion the signature in the deed was in his handwriting. His brother testifies to the sending of the money and to the fact that he changed the description in the deed, before the deed was sent, by writing the word "our" over the word "my," which he first wrote because he overlooked the fact that Alex Stephens was married. Eli Stephens testifies that he received four or five letters from his brother Alex in regard to the sale of the land. In his opinion, these letters were in his brother's hand-

writing. After agreeing on the terms of the sale, he had the money sent, and received the deed. No changes in the deed were ever made by him. Newton Stephens, a younger brother, testified that for several months just prior to and after the execution of the deed in question he boarded in the town of Henrietta, while his brother lived in the country. He says that he saw a letter from his brother, Eli Stephens, in regard to the sale of the land. He denies having impersonated his brother, and signing his name to the deed. He also denies that he received the letter enclosing the purchase money, or that he signed a return post card. He states that in his opinion the handwriting of the signature was that of his brother Alex, though he admits that his brother usually signs his name "A. L." or "Alexander L.," instead of "Alex." Other witnesses state that the signature is in the handwriting of the plaintiff.

Defendant insists that this is a case where the evidence is conflicting and upon a consideration of the whole case the mind is left in doubt, and that therefore the judgment of the chancellor should be affirmed. While it is true that where a case turns on a question of fact, the rule above announced is frequently applied, yet we have often held that where the testimony preponderates on one side or the other in such a way as to convince the court that the chancellor has erred, his judgment will be reversed. Bullock v. Harrison, 145 Ky., 358; Coomes Bros. v. Grigsby, &c., 151 Ky., 394. In this case it is practically admitted—or, at any rate, the evidence conclusively shows—that the certificate, so far as Angeline Stephens is concerned, is forged. A. L. Stephens says that he never signed or acknowledged the deed in controversy. Nor did he receive the purchase money. The signature on the deed appears to be but a feeble imitation of his real signature. A number of witnesses testify that it is not in his handwriting. The notary is positive that plaintiff is not the man who presented the deed to him for acknowledgment. Though we should make due allowance for this statement because of the time that has elapsed, and the further fact that it is contrary to the certificate of the notary, yet his recollection in the matter is certainly entitled to some weight. On the other hand the testimony for the defendants is that the handwriting is that of plaintiffs. However, it is apparent from

the cross-examination of these witnesses that their opinions are of but little value. The evidence that the deed was forged, and that A. L. Stephens was impersonated by someone, greatly preponderates. We are aware of the fact that in order to establish a case of forgery, the evidence should be clear and convincing. We think the evidence comes up to this standard. Numerous irregularities are conclusively shown. For them there is no satisfactory explanation. In our opinion, the chancellor erred in denying plaintiffs the relief asked.

Judgment reversed and cause remanded with directions to enter judgment in conformity to this opinion.