# Perry Bank & Trust Company's Liquidating Agent and Special Deputy Banking Commissioner et al. v. Colwell.

(Decided Jan. 19, 1934.)

CRAFT & STANFILL and JESSE MORGAN for appellants.
J. T. BOWLING for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

John Colwell was adjudged to be the owner of 200 acres of land in Perry county, and F. L. Cisco, as special deputy banking commissioner, and Vina Colwell have appealed.

This 200 acres was acquired by John Colwell under two deeds, one dated September 17, 1911, and the other March 24, 1913.

From a deed in this record it appears that John Colwell and wife on April 19, 1919, conveyed this land to S. C. Colwell. On March 16, 1922, S. C. Colwell and his wife, Vina Colwell, mortgaged this 200 acres for $5,000 to the Perry County State Bank, which, by merger with the Hazard Bank & Trust Company, became the Perry Bank & Trust Company, and so continued until November 15, 1928, when the last-named bank closed its doors, went into liquidation, and F. L. Cisco, as special deputy banking commissioner, was placed in charge of its affairs.

On January 25, 1930, Cisco sued S. C. Colwell and Vina Colwell to enforce this mortgage. On February 14, 1931, S. C. Colwell departed this life, leaving a will by which he devised this land to Vina Colwell, and made her his executrix. On June 13, 1931, the death of S. C. Colwell was noted of record, and the action revived against Vina Colwell individually and as executrix. On July 3, 1931, John Colwell filed an intervening petition in this action claiming this land as his own, and asserted the above deed of April 19, 1919, is a forgery.

This 200 acres is made up of two tracts; one is a tract S. C. Colwell bought from Mack Eversole in 1908, and the other is a tract S. C. Colwell bought from Hiram Begley in 1911. For some reason not disclosed by the record, S. C. Colwell and wife, Vina Colwell, conveyed this Eversole land to J. W. Morgan, the father of Vina. Later S. C. Colwell had Morgan convey this Eversole land to John Colwell, and when S. C. Colwell bought the tract from Begley he testifies S. C. Colwell had him convey it to John Colwell. Nevertheless, S. C. Colwell continued to exercise ownership over the 200 acres, to

live on it, to fence, cultivate, and improve it, to sell the timber off of it, and to pay the taxes upon it.

These things were testified to by Vina Colwell, and by proper exceptions John Colwell challenged her competency as a witness. The trial court excluded her evidence. She was testifying for herself, and, as to that part of her testimony, which related to transactions with S. C. Colwell, her husband now dead, she was not a competent witness, but as to the other parts of her testimony relating to other matters, and concerning which she may have derived her information, not from any communication made her by her husband and which she did not learn by virtue of the married relation, but learned from her own observation, she was a competent witness. See Ætna Life Ins. Co. v. Bethel, 140 Ky. 609, 131 S. W. 523; Metropolitan Ins. Co. v. Thomas, 106 S. W. 1175, 32 Ky. Law Rep. 770, and other cases cited in those opinions.

John Colwell himself admits S. C. Colwell lived on the 200 acres, cultivated it, got the income therefrom, sold the timber, paid the taxes, etc., but says he allowed him to do so because S. C. Colwell had no other place to go. Since both S. C. Colwell and John Colwell lived on this farm, there is sharp dispute in this record concerning which one lived there as the owner and which one lived there by sufferance of the other. We cannot now solve the problem by looking solely at the evidence as to acts of ownership, though the weight of that evidence is indicative of title in S. C. Colwell. But we must look at the other evidence, and the applicable law.

Hiram Begley was called as a witness, and he testified that, when he sold his tract of land to S. C. Colwell in 1911, S. C. Colwell conducted the negotiations with him and paid him the money, but directed him to convey it to John Colwell. Later (April 19, 1919), John Colwell and wife conveyed the 200 acres to S. C. Colwell, and the title has since so remained. This deed (April 19, 1919) is the one that is by John Colwell alleged to be a forgery, but it is complete and regular on its face and duly certified by J. D. Davis, the officer taking the acknowledgment, to have been acknowledged before him by John Colwell and his wife on that day. The deposition of Mr. Davis is before us. It fully supports his certificate of acknowledgment. He says he has known John Colwell for 35 years, and he tells convinc-

ingly the circumstances attendant upon the taking of this acknowledgment 13 years before. John Colwell attacks this certificate as a *false certificate*. By section 3760, Ky. Stats., the only attack permissible in this sort of action is an attack for mistake, but, if we should treat his attack upon this certificate for falsity as an attack for mistake, the evidence is not sufficient to show that it is so. John Colwell undertook to show by his grandson that the latter had been procured to sign the name of his grandfather, John Colwell, to a deed, but, when he was shown the deed of April 19, 1919, he said that it was not that deed. Two sons of John Colwell testified this was not his signature to this deed, and two other witnesses with long banking experience testified that it was. The deed of April 19, 1919, is before us, and, when we compare the signature of John Colwell thereto with his admitted signature to another deed which he introduced for comparison, our impression is that the signature is genuine.

It requires clear and convincing evidence to set aside a deed on the ground that it is a forgery. See 18 C. J. p. 449, sec. 556.

In Stephens v. May, 158 Ky. 126, 164 S. W. 325, and Crate v. Strong, 69 S. W. 957, 24 Ky. Law Rep. 710, the evidence was held to be sufficient, and in Rockcastle Mining, etc., Co. v. Isaacs, 141 Ky. 80, 132 S. W. 165, and Duff v. Virginia Iron, etc., Co., 136 Ky. 281, 124 S. W. 309, the evidence was held to be insufficient, and the evidence in this case is no stronger than the evidence in the latter two. Therefore the court erred in holding this deed to be a forgery.

Judgment reversed, with directions to set it aside, to sustain the validity of the deed of April 19, 1919, to dismiss the intervening petition of John Colwell and let the cause proceed.