## Friel v. Grayson Road Corporation et al.

(Decided December 14, 1928.)

## Appeal from Boyd Circuit Court.

1. Trial.—Motion to transfer issues to ordinary docket to be tried by jury which was not made until after issues were formed held to come too late.

2. Trial.—In suit to determine ownership of land, possession by defendant acquired through vi et armis trespass held insufficient to serve as basis for motion to transfer issues to ordinary docket for trial by jury, on ground that defendant was in possession at time action was commenced.

3. Quieting Title.—In suit to determine ownership of land, defendant's rights as measured by his true boundaries emanate exclusively from description contained in his deed, and not from statements, descriptive or otherwise, contained in collateral writings.

4. Appeal and Error.—In suit to determine ownership of land, defendant has no cause to complain of any error by which plaintiffs' title was quieted to land lying entirely outside defendant's boundary, though it was more than plaintiffs were entitled to, since appellant cannot complain of any error not operating to his prejudice and deprivation of his rights.

5. Appeal and Error.—In suit to determine ownership of land, Court of Appeals is not authorized to disturb judgment of chancellor as to boundary supported by preponderance of testimony.

6. Estoppel.—In suit to determine ownership of land, defendant, who saw disputed line established and watched completion of improvements by plaintiff, held estopped to claim land beyond such line.

MORRIS & JONES and J. B. ADAMSON for appellant.

J. F. HAGER and ROBERT T. CALDWELL for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The directions indicated in this opinion, while not absolutely true to the points of the compass, are sufficiently so for an understanding of the facts and for the purposes of the case. For some years prior to 1903, S. P. Brickey owned a tract of land near Ashland, Ky., containing about 45½ acres. Beginning with that year he commenced to verbally allot portions of it to his children in making a division of it among them, and when he made an allotment the selected donee took possession. The length of the divided tract ran east and west and its width was north and south and it was bordered on the south by a county road known as the Brickey road. Somewhere near the center of the length of the tract a road running

north and south intercepted the Brickey road at a right angle, and the land lying west of that road and south of the Brickey road was owned by the Ferry heirs, the northeast corner of their tract being at the southwest corner of the junction of those two roads, there being no road through the divided tract north of the Brickey road. One of the sons who shared in the allotment so made was Emmett F. Brickey, who on February 6, 1911, received a deed from his father for his portion of the division. The beginning corner of the description of that deed reads:

"Beginning at a corner an iron pipe 3 inches in diameter and 2 feet long, drove."

Every one connected with this case agrees that the corner so described was on the north line of the Brickey road and the preponderance of the proof locates it at the south terminus of an old cross-fence running north and south and built for the purpose of dividing the Brickey farm into fields. The description then runs east with the road 200 yards and continues around the boundary to the beginning corner, but so as to convey to the vendee therein a passway from his northwest corner some distance west from the cross-fence and along its line, after inclosing the passway, to the beginning corner. In 1912 the elder Brickey executed a deed for the same purpose to his son S. P. Brickey, Jr., whose allotted portion was supposed to lie immediately west of the tract allotted to his son Emmett. In describing the beginning corner in the deed to S. P. Brickey, Jr., these words were used:

"Beginning at an iron pipe on the north side of the road in the line between S. P. Brickey and Ferry's heirs the same being a corner to Emmett Brickey."

That description then runs west from the beginning corner and the second one from the last goes to the line of Emmett Brickey; thence south therewith to the beginning.

Before the filing of this action one of the plaintiffs and appellees, Grayson Road Corporation, purchased the tract conveyed to S. P. Brickey, Jr., together with other portions of the original S. P. Brickey, Sr., tract, with the purpose of subdividing and improving it for residential purposes; but prior to that time Emmett Brickey sold and conveyed the portion of land deeded to him in

such division to the appellant and defendant below, Pat
Friel. The plaintiff Grayson Road Corporation subdi-
vided the land and made a plat of it with the necessary
streets and alleys indicated thereon. One of the blocks
of the plat was No. 12, and it contained 24 lots, the first
11 of which abutted on the east the line upon which stood
the cross-fence above mentioned and which plaintiffs con-
strued (and we think correctly as will hereinafter ap-
pear) was the west line of the tract conveyed to Emmett
Brickey by his father and then owned by defendant.
After improving that subdivision with macadamized
streets and concrete walks, plaintiff spent a large sum of
money in piping water and gas to and over the entire
subdivision, the leading pipes for each of which were
as much as a mile in length, and it also constructed to and
over the subdivision electric wires for providing elec-
tricity for domestic purposes by the purchaser of the
lots. The first 11 lots of block No. 12 of the subdivision
were about 125 feet deep and fronted on an open street in
the subdivision designated as Floyd street, the west
boundary of which was practically a continuation of the
road running north and south and intersecting Brickey
road as we have hereinbefore described, and the west
line of that street was also practically opposite the Ferry
heirs' line hereinbefore referred to. After the subdivision
was made the Grayson Road Corporation sold to the
other appellee and plaintiff below, Boyd County Realty
Company, lots Nos. 8 and 9 in block 12, and it constructed
residences thereon at a cost of about $7,000 each. There-
after defendant concluded that his west line began at a
point on the Brickey road opposite the east line of the
Ferry heirs and from thence north so as to take in prac-
tically all of the first 11 lots in block 12, including those
upon which plaintiff Boyd County Realty Company had
constructed its two residences.

That conclusion, however, was not reached by de-
fendant until he had first demanded of plaintiffs that he
be permitted to extend his west line 11 feet over on to the
first 11 lots of block 12, because, as he contended, his
south line as called for in his deed was 600 feet instead
of 589 feet by actual measurement. After that conten-
tion made by him was ignored, he then tried to purchase
from the Grayson Road Corporation a vacant lot (one
of the 11) lying between his west line and Floyd street,
so as to enable him to reach the water and gas pipes in it,
and to thereby convey those commodities to his prem-

ises. He was unable to do so and he then tried to induce an employee of the owner to purchase the lot and then convey it to him so that he might accomplish the same purpose, and that effort on his part was likewise unavailing. It was after such preliminary moves on his part that he concluded he was the owner of practically all of lots No. 11 in block 12, and that conclusion was rested chiefly, if not entirely, on the description of the beginning corner of the tract conveyed to S. P. Brickey, Jr., by his father, and which was described as being "in the line between S. P. Brickey and Ferry's heirs, the same being a corner to Emmett Brickey." After he so interpreted his deed and made the latter contention, and after, as we have said, the subdivision was made and the residences alluded to were constructed, he, without the knowledge of either of the plaintiffs, began the construction of a wire fence running from the northwest corner of the junction of Floyd street with Brickey road, and being the point opposite the line of the Ferry heirs, and which took in as a part of his land practically all of lots 1 to 11 in block 12, including the two residences mentioned.

Immediately following that trespass by him, plaintiffs filed this equity action in the Boyd circuit court to quiet their title to the land so trespassed upon, and to obtain a mandatory order requiring defendant to remove his fence and to enjoin him from further trespasses. The answer was a denial, with a paragraph asserting title in defendant to the involved land, followed by a prayer that his title thereto also be quieted. The reply denied the affirmative allegations in the answer and also interposed pleas of champerty and estoppel. Appropriate pleadings made the issues and upon final submission, after extensive proof taken, the trial court granted the prayer of the petition and dismissed defendant's counterclaim, and to reverse that judgment he prosecutes this appeal.

It is first insisted by his counsel that the court erred in not sustaining his motion to transfer the issues to the ordinary docket to be tried by a jury. That motion was not made until after the issues were formed and as stated therein, it was "on the ground that the same is a suit to determine the ownership of land of which the defendant was in possession at the time the action was commenced." We are of the opinion that the motion came too late; but, waiving that question, it is apparent from the excerpt taken therefrom that counsel who prepared

it was cognizant of the rule that, if defendant was not
in possession of the contested land at the time of filing
the action, and plaintiffs were in possession of it, then
it was one brought under section 11 of our Statutes, and
which is exclusively of equitable cognizance, and more
especially so where defendant by counterclaim seeks the
same relief given by that section. Cooper v. Williamson,
191 Ky. 213, 229 S. W. 707; Sackett v. Jeffries, 182 Ky.
696, 207 S. W. 454; Frasure v. Northern Coal & Coke
Co., 189 Ky. 574, 225 S. W. 479; Osborn v. Osborn, 204
Ky. 144, 263 S. W. 738; and Johnson v. Collins, 209 Ky.
82, 272 S. W. 47. The question of possession was there-
fore eliminated in so far as it was essential to the em-
ployment of the remedy given by the statute. But, if it
were otherwise, then it is clear that the claimed posses-
sion by defendant could not avail him for any purpose
whatever, since he had but recently acquired it through
a vi et armis trespass, and manifestly for the purpose
of making the statutory remedy available to him and to
thereby deprive the plaintiffs of the benefit of it. Courts
will not recognize such an acquired possession as supply-
ing that necessary element of the remedy, nor will such a
trespass operate as a discontinuance of plaintiffs' pos-
session theretofore held by them. We therefore perceive
no merit in this contention.

It is next insisted by defendant's counsel that the
judgment was erroneous because in quieting plaintiffs'
title down to the beginning corner of the terminus of the
old cross-fence on the north side of the Brickey road, the
court necessarily reformed that portion of the first plain-
tiff's deed describing both its and defendant's begin-
ning corner as being opposite to the corner of the Ferry
heirs, and in line with their line. In making that con-
tention defendant resorts to a statement in a collateral
writing for the purpose of locating his beginning corner,
and his insistence in this regard necessarily involves the
contention that such collateral statement is as obligatory
in his favor as if it were contained in his deed, but which
is clearly incorrect. At most it can operate beneficially
to him only as an admission by his father, who was his
grantor. Clearly, defendant's rights, as measured by his
true boundaries, emanate exclusively from the descrip-
tion contained in *his* deed, and not from statements, de-
scriptive or otherwise, contained in collateral writings,
which could not possibly have any conveying effect to
him.

The proof in the case on the proper location of defendant's beginning corner on the Brickey road at the south terminus of the old cross-fence is abundantly sufficient to sustain the judgment below as to its true location. With that corner established at the point found by the chancellor, all of defendant's contentions to ownership of any land west of that fence fall to the ground. If, therefore, we should concede for the purposes of the case that the court, in quieting plaintiffs' title so as to carry it to that fence and to include the controverted land, erroneously reformed the deed executed to S. P. Brickey, Jr., by his father, then defendant cannot complain, since he was adjudged all the land conveyed in the boundaries of *his* deed, and therefore he has no cause to complain of any error of the court through and by which plaintiffs' title was quieted to other land lying entirely outside of his boundary, although it was more than they were entitled to under their deeds and those of their vendors.

· That an appellant may not complain of an error, howsoever gross, that did not operate to his prejudice and to the deprivation of some of his rights, is a principle of law of ancient origin and of uninterrupted application by the courts. It is broadly stated in the text of 4 C. J. 690, secs. 2589 and 2590, in the latter of which it is said:

> "Rulings upon questions or branches of the litigation which do not affect the interests of appellant, or plaintiff in error, cannot be assigned by him."

In the note to that text there are cited cases from many courts of the Union, including those from this court of Meuth v. Long, 50 S. W. 967, 21 Ky. Law Rep. 21, and Howard v. Howard, 87 Ky. 616, 9 S. W. 411, 10 Ky. Law Rep. 478, 1 L. R. A. 610. Other cases from this court to the same effect are Johnson v. Gunnell, 177 Ky. 361, 197 S. W. 790; Prewitt v. Wilborn, 184 Ky. 638, 212 S. W. 443; and Varney v. Orinoco Mining Co., 201 Ky. 571, 257 S. W. 1016.

In the Johnson case the exact question was presented in an action seeking the same relief that both parties sought in this case, and in which the practice was also identical. In that case plaintiff sought the quieting of his title to a described tract of land to which, or a portion of which, defendant also claimed title and asked that his title be quieted. The court dismissed defendant's counterclaim and quieted plaintiff's title, from

which judgment defendant appealed and insisted in this court that the judgment was erroneous because the court improperly adjudged the title to the land in plaintiff. But that contention was denied upon the ground that the facts in the case showed that defendant had neither title nor right of possession to the land, and that it was no concern of his that the court erroneously adjudged the title in plaintiff.

In the Varney case, which was also the same character of action as this one, the judgment dismissed plaintiffs' petition and adjudged defendant to be the owner of the contested land. Plaintffs' testimony showed that they had no title to it, but they insisted on appeal that the same was true as to defendant's title and that the court erred in quieting it; but we held that plaintiffs could not complain of the judgment in that respect, although erroneous, and in doing so we said:

> "Plaintiffs are in no condition to complain of that part of the judgment adjudging defendant to be the owner of the land, since their rights are not affected by its propriety or impropriety."

The principle of law just stated would, of course, have no application in a case of this kind where the successful party was adjudged, and his title quieted to, land in the possession of his adversary and within the boundaries of his described tract. In that case the defeated litigant would have the right on appeal to insist on a reversal of the judgment and for a quieting of his title to all the land within his described boundary.

What we have thus far said is upon the theory that the proof sustains the chancellor's finding as to the true boundary of defendant's land, and which necessarily involves the correct location of his beginning corner. We have carefully read the testimony on that issue and we are convinced that, to say the least, the preponderance of the testimony supports the judgment thereon, and under the rule prevailing in this court upon such findings by the chancellor, we are not authorized to disturb his judgment thereon.

We might close this opinion at this point, but we deem it proper to add that the testimony in the case abundantly sustains the pleaded estoppel. The Grayson Road Corporation before accepting a deed to the land had it surveyed. Defendant was present, at least part

of that time, and he saw the disputed line occupied by the old cross-fence, and all west of which had theretofore been in the possession of others, and east of which defendant had his residence. He silently stood by and watched the completion of all the improvements that the Grayson Road Corporation made west of that line, as then located along the old fence and never interposed the slightest objection thereto. Moreover, he also remained silent and watched the other plaintiff and appellee construct two costly residences on a part of the controverted land without ever whispering or murmuring an objection. In avoidance of such estoppel his counsel relies on the case of Stratton v. Syck, 176 Ky. 750, 197 S. W. 389. In that case the disputed line was in an old Pinson survey which had become dimmed and lost, and the entire controversy was as to the true location of that line; it being contended by the plaintiff that it was at one place and by the defendant that it was at another. Neither litigant claimed any rights beyond that line wheresoever its true location was. It was therefore held by us that the question of estoppel as against either party was not presented nor involved. We have in this case an entirely different state of facts. Continuously up to the making of the improvements by plaintiffs each party and his predecessors in title recognized the old cross-fence as the true line separating defendant's land from the adjoining land on the west of it, and with that recognition the improvements before mentioned were made, and during all that time defendant remained silent and thereby created as complete an estoppel against himself to make the contention now insisted on by him as it is possible to do.

The plea of champerty contained in the reply is based upon the fact that at the time defendant received his deed from his father, his brother, S. P. Brickey, Jr., was then in the adverse possession of all the land west of the old cross-fence, and that so much of it, if any, as was conveyed to him by his deed and then in the possession of his brother, who claimed to own it, was champertous and void; but because of the matters hereinbefore discussed we will not consider or determine that question.

For the reasons indicated, the judgment is affirmed.