# Middlesboro Town & Land Co. et al. v. Louisville & N. R. Co.

(Decided Oct. 4, 1938.)

HIRAM H. OWENS for appellants.

H. L. BRYANT, J. MILLER WHITE and ASHBY M. WARREN for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

As the appellant, J. H. McGiboney, owns all the stock of the Middlesboro Town and Land Company, they are in fact the same. Therefore, we will treat McGiboney as the sole appellant.

Alleging that he was the owner and in possession of four tracts of land described in his petition situated in

Middlesboro, Kentucky, and that appellee was claiming some title or right of possession thereto which clouded his title, appellant brought this action in equity against appellee to quiet title to his lands. Appellee filed a special demurrer and answer denying both the possession and title of appellant and pleaded ownership and possession of the land, but asked for no affirmative relief. As a basis for its special demurrer appellee urged that the Middlesboro Town and Land Company had ceased to do business and did not exist in any corporate capacity and therefore had no legal capacity to sue. Appellee further pleaded estoppel due to a judgment obtained in its favor regarding tract 4 in a former action and that it had paid taxes, built improvements and paid for adjacent street improvements without objection by appellant.

Both litigants claim title from the same source. By deed, dated May 1, 1891, the Middlesboro Town Company conveyed to the Knoxville & Cumberland Gap and Louisville Railroad Company the property in question. The deed stipulated that the property was "to be used for railroad purposes only" and provided that when the property "or any part thereof ceased to be used for said purposes, that part shall revert to the party of the first part, his heirs, successors or assigns." Appellee obtained the property from the Knoxville & Cumberland Gap, etc., Railroad. Appellant McGiboney, as successor to the Middlesboro Town Company, claims title under the reversion clause in the deed.

On final hearing the chancellor dismissed the petition on two grounds (1) that appellant failed to prove possession sufficient to maintain this action under Section 11, Kentucky Statutes, and (2) that appellant failed to prove an abandonment of the property by appellee so as to cause a reversion under the deed. We will discuss these two points as the only necessary issues on this appeal.

Section 11, Kentucky Statutes, under the heading of "Action to Quiet Title," provides in part: "It shall and may be lawful for any person, having both legal title and possession of lands, to institute and prosecute suit * * *."

This court has held in a long line of cases that in order to maintain an action under this section, the plain-

tiff must not only make but sustain the allegations of possession. See Fields v. Couch, 169 Ky. 554, 184 S. W. 894, and cases therein cited. The possession relied upon by appellant for the maintenance of this action is best described by his own deposition in which he states:

"I went on the tract the morning the suit was filed and sent other agents or men I had hired to the different tracts and we took possession of them and nailed up notices that it was my property—Town Company property and nailed up notices on all the tracts and they stayed there for a week or ten days. Q. How long did you stay on the property the day the suit was filed? A. A couple of hours. Some of the men were not there that long. Q. What arrangements did you have with reference to the time you and your agents went on the land? A. I had the suit filed at ten thirty-six and a few minutes before that time we went there and stayed there quite a while. I will say ten or fifteen minutes we were there nailing up these notices and taking possession."

In his deposition P. H. Harrold, one of the agents of McGiboney, said in answer to the question as to how he got on and off the property, "I climbed the fence." While appellant was thus allegedly taking possession, appellee was openly claiming both title and possession to all the land in question, and had actually been in its possession for many years.

In Friel v. Grayson Road Corporation, 226 Ky. 794, 11 S. W. (2d) 943, the defendant, basing his title upon a deed, entered upon property claimed by the plaintiff and erected a wire fence. Plaintiff, relying on the erection of the fence for his possession, brought suit to quiet title and defendant by counterclaim asked that his title be quieted. This court said [page 945]:

"The claimed possession by defendant could not avail him for any purpose whatever, since he had but recently acquired it through a vi et armis trespass, and manifestly for the purpose of making the statutory remedy available to him and to thereby deprive the plaintiffs of the benefit of it. Courts will not recognize such an acquired possession as supplying that necessary element of the remedy, nor will such trespass operate as a discontinuance of plaintiff's possession theretofore held by them.

We therefore perceive no merit in this contention."

Turning to the other phase of the case we find that the deed under which both litigants claim title provides that this property was to be used "for railroad purposes only" and that when the holders ceased to use it for this purpose it was to revert to the heirs, successors, or assigns of the original grantor. Appellee, the Louisville & Nashville Railroad, vigorously denied any abandonment of the property for railroad purposes. The pictures of the property filed by both parties show that nearly all, if not all, the property was enclosed by appellee's fencing. The proof reveals that the railroad company has its depot and tracks, all in constant use, on part of tracts 1 and 2. Tract 3 has been leased to customers with which the railroad transacts business, and drainage pipes run under same. Tract 4 contained some of appellee's tracks and the other portion is used by the State Highway Department. On the other hand, it is true that small parts of some of the tracts are not at present actually used for railroad purposes. However, the chancellor held, and the proof clearly upholds, that it would be extremely difficult to determine just where the line of demarcation would start in between that which is actually and physically used by the railroad company for railroad purposes and that which it might expect to use in the future for railroad purposes. Under the deed in order for appellant McGiboney to have title and right to possession, it would be necessary for the appellee to have abandoned this property for railroad purposes. The burden of showing such abandonment was on appellant McGiboney and the evidence does not support his contention.

In Sandy River Coal Company v. Champion Bridge Company, 243 Ky. 424, 48 S. W. (2d) 1062, the rule is stated that "abandonment of property requires the concurrence of an intention to abandon and actual relinquishment." [page 1063.] See Rice v. Rice, 243 Ky. 837, 50 S. W. (2d) 26; Stinnett v. Kinslow, 238 Ky. 812, 38 S. W. (2d) 920; Barton v. Jarvis, 218 Ky. 239, 291 S. W. 38.

In 22 R. C. L. sec. 118, the rule is laid down:

"The important element in determining whether there actually has been an abandonment by Railroad company of any part of its right of way is the

intention of the Company. It is generally held that the mere use of the easement for a purpose not authorized, or a temporary disuse thereof is not of itself sufficient to constitute an abandonment. To hold full width of its right of way a railroad company need not cover it with its tracks, it is sufficient if a portion of the strip is occupied.''

Viewing the proven facts and circumstances in the light of the authorities cited, it is manifest as we are constrained to hold that the chancellor's finding in both particulars indicated is correct.

Judgment affirmed.