## Marlowe et al. v. Marcum et al.

**May 21, 1943.**

A. T. W. Manning for appellants.

C. P. Moore and William Lewis & Son for appellees.

OPINION OF THE COURT BY JUDGE SIMS—Reversing in part and affirming in part.

Lewis Marcum and wife, on August 21, 1936, conveyed to M. K. Marlowe the "Scrivener-Moore" seam of coal under five tracts of land in Jackson County, containing 126 acres constituting their home place. The consideration was $25 per acre and grantee was given 25 years to mine the coal "with all rights of ingress and egress over said lands and to build and make use of such roads as will be necessary in the moving and operation of said coal and the right to build and construct tipples, schoots (chutes) and so forth and to dump slate and all refuse at any place most convenient to the party of the second part but not so as to interfere with any buildings, orchards, growing crops, or water supplies on said land."

On the same day by separate deeds Marlowe also acquired from Marcum fee simple title to 40 acres for $3,000 on which a coal mine was being operated; and the coal rights in what is known in the record as the Purvis land for $25 per acre. These two tracts are about 1.5 miles from the home place, which latter is the only land involved in this litigation. The entire consideration paid Marcum by Marlowe for the property conveyed in the three deeds was $8,800.

Subsequently Marlowe acquired the coal under the Lewis Johnson land adjoining Marcum's home farm and opened a mine thereon with the tipple located just a few feet from the Marcum line. No mine was ever opened on Marcum's home place, but on a 1.2 acre triangular strip thereof, lying between the tipple on the Johnson land and highway No. 21, Marlowe erected a commissary, residence, poolroom, garage, truck shed, scales and built a road some 350 feet leading from the highway to the tipple; all of which were used in connection with marketing coal from the Johnson land which was hauled by truck from the tipple. In constructing the road Marlowe covered a spring on this triangular strip, and dumped dust and slate from the tipple on this small piece of land.

By his petition filed November 2, 1938, which was four times amended, Marcum sued Marlowe and the Jackson Coal Company, a corporation of which Marlowe was president and the owner of 60% of its stock and to which he had leased the coal properties purchased from Marcum. Plaintiff asked $500 damages for covering his spring; two cents a ton for all coal hauled over the road from the tipple to the highway; $300 damages for dumping debris on this strip; and $75 per month for the rent of the buildings erected thereon; all of which the petition alleged was done without right and against the will and consent of the plaintiff.

The answer and counter-claim was a traverse followed by an affirmative plea that it was agreed between the parties when the coal rights were sold defendant might construct roads and buildings on the home place and dump debris thereon from his mining operations on adjacent lands, but that by mutual mistake or oversight such terms were omitted from the deed, a reformation of which was asked. Further, an estoppel was pleaded in that plaintiff made no objection to defendants' use of the 1.2 acre strip on the home place and the construction was made thereon with his knowledge and acquiescence.

Considerable proof was taken and upon final submission the chancellor adjudged nothing was omitted from the deed by mutual mistake or oversight and refused to reform it. He further adjudged that plaintiff recover of defendants $500 damages for covering the spring, and $3,790 for rent of the buildings erected on the 1.2 acre strip, being $60 per month from January 11, 1939, to June 24, 1942 (date of judgment); but refused any recovery for debris dumped thereon or for coal hauled over the road. Defendants appeal from the $4,290 judgment against them, and plaintiff cross-appeals because he was denied recovery for the use of the road and for the debris dumped on his land.

A writing will not be reformed unless the evidence of mutual mistake or oversight is clear and convincing— a preponderance of the evidence is not sufficient to work a reformation. Stokes v. Farmers' & Merchants' Bank of Elkton, 241 Ky. 699, 44 S. W. (2d) 837; Farmers-Exchange Bank of Millersburg v. McDaniel, 266 Ky. 743, 99 S. W. (2d) 827. Without discussing the mass of testimony relative to the agreement between the parties concerning the sale, it will suffice to say there is

no evidence that any terms or conditions agreed upon were omitted from the deed. The draftsman, Hector Johnson, testified the parties were present and he wrote the deed just as they wanted it. The mining rights enumerated in this deed were quite different from those contained in the deed to the Purvis property written the same day, evidencing the fact, as testified by plaintiff, that he wanted his home farm marred as little as possible by mining operations and by mine buildings.

The proof of Marlowe was to the effect he was attempting to develop the coal industry in the community and that it would be impracticable to build a tipple on each of the small tracts acquired by him, but it was defendants' purpose to produce, prepare and market all coal through the Johnson tipple; that all structures erected on the 1.2 acres owned by plaintiff were to be used in the operations to develop the field.

It is evident defendants thought the mining privileges contained in the deed conveying the vein of coal on the home place allowed them to exercise such rights on plaintiff's land in producing coal from other lands. In this they are mistaken. The rule is that in the absence of an express agreement the holder of coal rights cannot use the surface owned by his grantor or lessor in producing, cleaning, marketing or in any way handling coal produced on the lands of another. The mining privileges and rights contained in the lease or deed relate to coal to be produced from the land covered by the instrument and none other. 40 C. J. Sec. 612, p. 1012; Moore v. Lackey Mining Co., 215 Ky. 71, 284 S. W. 415, 48 A. L. R. 1402; Imperial Elkhorn Coal Co. v. Webb, 190 Ky. 41, 225 S. W. 1077; Middleton v. Harlan-Wallins Coal Corp., 252 Ky. 29, 66 S. W. (2d) 30; also see annotations in 48 A. L. R. 1406.

The undisputed evidence is that when defendants started to make the improvements on the 1.2 acre strip, plaintiff inquired of Marlowe if he had the right to so use the land and advised him to consult an attorney. Subsequently Marlowe reported he had seen an attorney and had been advised he was within his rights to build on this land. Thereupon plaintiff consulted an attorney and was advised Marlowe had no such rights and could be stopped immediately. But plaintiff did not further protest to Marlowe because "it appears like he is a mighty fine man, Mr. Marlowe is, so I think he will do

me right." Marlowe testified plaintiff showed him where to move the fence, construct the road, build the commissary and where to pile the slack. Plaintiff stood by and saw the defendants erect the structures on his land without making protest well knowing he could have stopped them, also he was aware of the fact defendants thought they had the right to so use his land. He not only failed to complain about the use being made of this small parcel of land, but he advised with Marlowe where the structures should be erected, and after thus acquiescing in plaintiff's actions and without making complaint for a year and a half, he then instituted this suit.

Plaintiff's actions make about as strong a case of estoppel against him as well may be imagined. Although he had knowledge of the facts and of his rights, plaintiff permitted defendants without objection but with his acquiescence to make the improvements on his property under the claim and belief they had the right to do so. Therefore, plaintiff is estopped to deny such right to the defendants who relied upon and were misled to their prejudice by his conduct. 31 C. J. S., Estoppel, Sec. 94, p. 314; White's Adm'r v. Thompson, 187 Ky. 480, 219 S. W. 434, 8 A. L. R. 1641; Shackelford v. Miller, 217 Ky. 132, 289 S. W. 222; Wabash Drilling Co. v. Ellis, 230 Ky. 769, 20 S. W. (2d) 1002; Friel v. Grayson Road Corp., 226 Ky. 794, 11 S. W. (2d) 943; Blackburn v. Piney Oil & Gas Co., 278 Ky. 191, 128 S. W. (2d) 192.

While plaintiff is estopped from claiming the buildings or their fair rental value during the time they occupy his land, he is not estopped from recovering from the defendants the fair rental value of the 1.2 acres for the approximate three and a half years defendants occupied it. The proof shows this land has an annual rental value of $10, therefore plaintiff should recover $35 on this item for the use defendants made of the entire strip from January 11, 1939, to June 24, 1942, the date judgment was entered. Nor is plaintiff estopped from asserting damages done his spring by the road built over this strip. The proof shows it was an everlasting source of stock water for plaintiff's farm, and there is evidence in the record to the effect that it was not necessary to cover this spring in constructing the road; that the road was covered by 6 or 8 feet of slack and the damage done the farm by its loss was $500. The $500 damages allowed by the chancellor for the loss of

this spring seems high to us, but the uncontradicted proof fixes it at that sum and we must let it stand.

The chancellor erred in enjoining defendants from using this 1.2 acres. When defendants occupied this small strip, plaintiff knew that they intended to use the structures they placed thereon as long as they produced coal from the surrounding lands. Therefore, plaintiff is estopped to complain of the occupancy of this land by defendants so long as they continue their mining operations, not to exceed the term of 25 years set out in his deed. But plaintiff may collect $10 per year rent from defendants during the time they occupy this strip.

The judgment is reversed on the appeal with the directions to enter one in conformity herewith; on the cross-appeal it is affirmed.