**WISER OIL COMPANY and Petroleum Exploration, Inc., Appellants,**

v.

**T. J. CONLEY, Appellee.**

Court of Appeals of Kentucky.

Dec. 16, 1960.

Rehearing Denied June 23, 1961.

719

Allen Prewitt, Frankfort, Earl R. Cooper, Salyersville, for appellant.

C. Kilmer Combs, Combs & Combs, Prestonsburg, for appellee.

STEWART, Judge.

The Wiser Oil Company and Petroleum Exploration, Inc. appeal from a judgment

of the Magoffin Circuit Court holding that they must pay T. J. Conley, the surface owner of a tract of land on which they have a lease for oil and gas, damages for the destruction of the surface and of the coal thereunder, said damages being caused by 'a new method of forcing oil from underground. They also appeal from a supplemental judgment holding that they are not entitled to use the surface of the leased premises for the production of oil from other tracts of land, in the absence of the express consent of Conley.

Appellants are equal co-lessees of the oil and gas rights located under the surface of 82.87 acres in Magoffin County. Their predecessor in title obtained the lease from appellee's· predecessors in title on March 10, 1917. Oil in paying quantities was found soon thereafter, but production from wells dug has diminished over the years to the point where further pumping by ordinary, conventional methods would be unprofitable. Appellants therefore proposed to increase output by the only profitable plan they could resort to, i. e., by "water flooding" the wells. When appellee ascertained their intentions in this respect, he instituted this action against them, asking an injunction against the use of such a method on his land and $20,000 for damages if appellants proceeded to carry out such a practice.

The lower court made these pertinent findings of fact: That the new process calls for drilling twelve water wells through appellee's seam of coal under his land, which would require that a pillar of coal 200 feet square be left around each of the proposed wells; that these operations would cause substantial injury to the coal which is still owned by appellee and to the surface which he regularly farms; and that the water-flooding system was not in use in Kentucky at the time of the execution of the lease.

The judgment, dated August 11, 1958, recited that appellants under their lease had the right to go upon the land, drill additional water injection and oil wells, build roads, pipe lines, electric lines and sludge pits, and install the machinery and equipment necessary for the production of oil by the new method. However, based upon the factual findings just mentioned, it was further adjudged that appellee would thereby suffer substantial injury, both to the surface of his land and to the coal underneath, for which he could thereafter recover damages. Since no loss had yet been sustained because the new plan had not been employed, appellee's claim for damages was dismissed without prejudice. Both parties appealed from this judgment, but appellee's appeal was never perfected.

Meanwhile, appellants moved on the premises and began production by the water-flooding arrangement. On October 24, 1958, appellants filed a supplemental counterclaim asking for a declaration of rights against appellee, whereby they sought the right to use the electric and water-pipe lines they had constructed on appellee's property to bring in oil from other lands in the vicinity of the leasehold in controversy. On November 6, 1958, the trial court held there had been no specific grant of any right to utilize the surface of the leasehold for the development of other lands, and decreed appellants were not entitled to do so.

The lease agreement granted "all" the oil and gas in the tract involved herein, with the exclusive right to drill for these two minerals. There was also a right of way given over the land "for any purpose." The landowner retained the right "to fully use and enjoy said premises for the purpose of tillage," except such parts thereof as were devoted to the uses specifically mentioned in the lease. There was bestowed upon the holder of the lease the right "to use all means and appliances on or off these premises to secure and facilitate. the production of oil and gas."

It is the contention of appellants that since "all" of the oil was sold, they should have the right to extract it by any process that is feasible; and it is their further contention that their ownership of the oil gives them an implied right to avail themselves of as much of the surface and of the underlying coal as may be required to withdraw it by the new plan, including space for new oil and water wells, roads, sludge pits, water and electric lines, or space for other purposes directly related to such an operation, and that they should not be held liable in damages for so using appellee's property.

Appellants rely upon General Refractories Co. v. Swetman, 303 Ky. 319, 197 S.W.2d 769, 770, for the position taken by them, wherein it is stated: "Numerous authorities could be cited to the effect that, unless the conveyance itself repels the construction, one who owns the mineral rights in the tract of land *by implication of law* acquires the right to use as much of the surface as may be reasonably necessary for the beneficial and profitable operation of his mines."

Appellee maintains, however, that when the oil and gas rights were sold in 1917 it was not contemplated that any process of producing oil would be employed other than the one then in normal use; and that it certainly was not at that time in the minds of the parties that such a novel plan of extracting this mineral, which would cause undreamed of destruction to the surface and to the underlying coal and which had never before been resorted to in Kentucky, should be employed without compensating the landowner for the damages done thereby.

It is our view the question raised is a new one in this state. Nevertheless, appellants assert that the case of Buchanan v. Watson, Ky., 290 S.W.2d 40, sustains their argument that they should not be held liable for any injuries to the surface or to the underlying coal in any of their operations under the water-flooding system. We do not agree. There is a vital difference between the terms and conditions of the mineral deed involved in the Buchanan case and the language embraced in the oil and gas lease under consideration here. The mineral deed contained an express waiver of damages which this Court stated was sufficiently broad to prohibit a recovery for any destruction from strip mining that might result to the surface. The waiver of damages condition was the controlling feature in the Buchanan case. On the other hand, the oil and gas lease has no such waiver provision and, furthermore, we do not believe such a provision can be read into it. There is no decision by this Court which might indicate what it would do where, as here, there is a virtual destruction of the surface, as well as considerable injury to the coal seam, by a new system of oil withdrawal where the owner or lessee of the oil and gas rights has no waiver of damages to rely upon.

There is a sound basis for the rule that a deed or lease of minerals carries with it the right to use as much of the surface, or other property, as may be reasonably necessary to exploit the minerals. We also are aware of the well-known concept that where the injury done to the property was of an anticipatory character, such a result would constitute damnum absque injuria. But where, as here, there is no express release of damages and a new method of withdrawing oil is employed, which was not in the minds of the parties at the time the lease was executed and which will destroy or substantially damage the landowner's remaining estates, principles of justice and humanity would require that reasonable compensation be paid the landowner for the devastation wrought.

Even though appellants assert that the water-flooding process was known prior to March 10, 1917, the date of execution of the lease, and was employed to some extent in other states before that time, we

conclude it was the intention of the parties that oil should be produced by drilling in the customary manner that prevailed when the lease was executed. Any exemption from liability would therefore be limited to the damages which might be caused by this contemplated means of bringing oil to the top.

Appellants, on their supplemental appeal, contend that, since their lease of the premises gives them a "right of way over same for *any* purposes," they can use appellee's surface to produce oil on other lands. They argue that the phrase "any purposes" is unlimited in its scope of application, and they rely on the ruling in Cornett v. Louisville & Nashville R. Co. et al., 298 Ky. 95, 182 S.W.2d 230, which held that a provision in a mineral deed, granting a "right-of-way for any and all railroads which may thereafter be located on" the land involved, plainly permitted the grantee to authorize a corporation not mentioned in the deed to build, operate and maintain a railroad over the land without any limitation of its use to the removal only of coal mined on the property.

It is well settled in Kentucky, as elsewhere, that in the absence of an express agreement, the mineral owners or lessees cannot use the surface for the production of minerals from other lands. This could hardly be better stated than in the case of Marlowe v. Marcum, 294 Ky. 405, 171 S.W.2d 997, at page 998:

> "The rule is that in the absence of an express agreement the holder of coal rights cannot use the surface owned by his grantor or lessor in producing, cleaning, marketing or in any way handling coal produced on the lands of another. The mining privileges and rights contained in the lease or deed relate to coal to be produced from the land covered by the instrument and none other. (Citations omitted)"

It is our view the giving of a right of way "for any purposes" must be construed in connection with the lease of which it is a part, and this expression thus means that a right of way may be used when such is reasonably required in connection with the operation of the lease. A careful reading of the Cornett case convinces one that the right of way granted there was, as this Court stated, to permit a person or corporation "to build, operate, and maintain a railroad over the surface now owned by appellant (Cornett), without limitation to its use." Obviously the facts of that case are not analogous to those in the one at bar.

Wherefore, the judgment is affirmed.