MIRANDA BIRKHEAD, ET AL *v.* R. G. KYLE.

[Abstract Kentucky Law Reporter, Vol. 6—301.]

**Mortgage of Married Woman.**

> A married woman may mortgage her general estate in land to secure her husband's debts. For evidence held sufficient to show that parties signed and acknowledged a mortgage, see opinion.

APPEAL FROM LOUISVILLE CHANCERY COURT.

October 25, 1884.

OPINION BY JUDGE PRYOR:

We perceive no reason for disturbing the judgment below in this case. It is conceded that all these parties were at the law office of Clemmons in 1874 to employ him to draft a mortgage and that by

reason of some trouble in regard to the boundary the time was post-
poned for a short period. Whether there was one or two mortgages
written is immaterial. It is certain that no mortgage was acknowl-
edged or lodged for record on the 1st of October, 1874. Mrs.
Birkhead and Clemmons think there was one written in October
and that the clerk intimated that it was defective and for that rea-
son the attorney promised to write another, inserting the proper
boundary. This the weight of the testimony conduces to show.
That he did write another mortgage by inserting the proper boun-
dary in printed form, the same now on file in this action is certain
and some weeks after this Birkhead and his wife came to his office,
got the mortgage and left. Whether they signed it at the time
he does not remember; but he does distinctly remember that they
were to return and execute the mortgage when he obtained the
proper boundaries.

Kyle swears that this mortgage on file and recorded is the same
mortgage that was executed by the parties, acknowledged by them,
and delivered to secure the four notes; that it was done on the 7th
day of November at Clemmons' office, he being present at the time
and the writings dated the 1st of October by reason of the arrange-
ment first made. He says that they were at Clemmons' office on
the 1st day of October, 1874, but that no mortgage was then
written. In this he is contradicted by Clemmons and Mrs. Birk-
head and his being at Clemmons' office on the 7th day of November
seems not to be remembered by either Clemmons or Mrs. Birk-
head and there is proof conducing to show that Mrs. Birkhead
and her husband were at home on that day and not in Louisville.
It is perfectly natural and reasonable that they should have returned
to execute a paper they had agreed to execute but failed to do so for
the reasons given, and we can not well see how Clemmons can be
mistaken as to filling up the second mortgage and delivering it to
Birkhead and wife, and when traced to their possession the next
place we find it, is of record, properly certified and acknowledged.
How did it get out of their hands? The wife maintains she never
signed it or saw it, but Clemmons and Kyle both state the contrary.
The discrepancy as to their statements as to the time, and other
circumstances connected with the transaction but add to the good
faith in which each witness has deposed. While on the other hand
there is every reason to believe that the husband and wife executed
a writing that they had agreed should be executed to secure this

appellee in the payment of money he had advanced to enable him to purchase the identical land mortgaged.

Birkhead told Frederick that Kyle would aid him in buying the property and Kyle actually paid him $500 and held Birkhead's notes for $2,000. Kyle says that it was money loaned the parties to pay for the land. Mrs. Birkhead denies that fact and insists that it had nothing to do with the land. We are satisfied from this proof that Mrs. Birkhead and her husband signed this mortgage and there is less difficulty in reconciling the facts to such a conclusion, than to assume that Kyle had forged the names of both parties to the instrument and induced the clerk to record it when no acknowledgment had been made. A married woman may mortgage her general estate in land to secure the debts of the husband, and it is needless to discuss such a question. It has been too long settled to admit of controversy. She not only signed the notes but signed the mortgage and the discrepancy in the date of acknowledgment, if it was settled beyond controversy that she was at home on the Saturday when it is said to have been acknowledged would not affect the result. If an alibi on the part of the married woman is established showing that she could not have been at the clerk's office on the day the acknowledgment bears date, is sufficient to invalidate the title, it would open the door to a litigation out of which many titles now secure would be wrested from the real owner. The court below acted properly in subjecting the property to the mortgage debt.

Judgment *affirmed.*

*E. S. Watts, Mix & Rogers, for appellants.*

*John Barrett, for appellee.*