# Kentland Coal & Coke Company v. Levine, et al.

(Decided March 23, 1928.)

## Appeal from Pike Circuit Court.

1. Deeds.—Where validity of recorded instrument is contested, recording or other statutory evidence of due execution of recorded paper furnishes strong presumptive evidence of its execution, and burden is on one contesting validity to prove facts relied on as a basis of contest.

2 Deeds.—Burden of proof resting on person contesting validity of recorded instrument must be sustained by clear and convincing testimony.

3. Deeds.—In action to quiet title, wherein plaintiffs alleged that recorded deed under which defendants claimed title was a forgery, evidence held insufficient to sustain finding that defendant's deed was a forgery, in accordance with requirement that such proof must be by clear and convincing testimony.

4. Evidence.—Statements of grantor, made after sale of coal under land, to effect that he had not sold coal, held inadmissible as self-serving.

HAGER & STEWART, W. G. FLEU and HARMAN, FRANCIS & HOBSON for appellant.

MOORE & CHILDERS and PICKLESIMER & STEELE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

A decisive question in this case is the validity of a deed purporting to have been executed and acknowledged by Jonathan Wolford and wife, Vashti Wolford, on June 24, 1889, and recorded in the county court clerk's office of Pike county on July 11, 1889, whereby they purported to convey to J. Stras, trustee of the Kentucky Coal Company, all of the coal under and in a tract of land on Peter creek in Pike county containing about 198 acres. The writing purports to have been acknowledged by the grantors in due form before one J. D. Wolford, who was then a deputy county court clerk under H. Williamson, who was the regular clerk of Pike county at that time. The certificate is in due form, and, when it and the deed were recorded, the clerk entered on his records this certificate:

"I certify that the foregoing deed was this day lodged for record, that it and this and the foregoing certificate have been duly recorded in my office."

Shortly thereafter the grantee therein sold the mineral to another, who later conveyed it, and, between the date of the execution of the involved deed and 1910, eight conveyances were made of the mineral purported to be granted by the deed of date June 24, 1889, the last vendee being the appellant and defendant below, Kentland Coal & Coke Company. On May 18, 1918, appellees and plaintiffs below, J. Levine, trustee and others, filed this equity action in the Pike circuit court against defendant, alleging their ownership of the coal in and to the tract of land described in the contested deed, and which they acquired by deed executed to them on January 25, 1918, by the surviving widow and heirs of Jonathan Wolford, the former being one of the grantors in the contested deed, and they alleged that the deed under which defendant claimed title (the one executed by Jonathan Wolford and wife on June 24, 1889), was a forgery, and that neither of the purported grantors therein signed or acknowledged it, and its recordation created a cloud on plaintiff's title, which they sought to remove, and they prayed that it be canceled and held for naught, and that plaintiffs be adjudged the owners of the coal in and to the tract of land.

The answer asserted ownership by defendant under the 1889 deed, and denied that it was a forgery, or that

it was invalid for any reason whatever. Other issues were sought to be raised by the answer, which was also made a cross-petition against third parties, and they were brought into the litigation. For the purposes of this case we have concluded to confine the opinion to the single and decisive issue as to whether the purported deed from Jonathan Wolford and wife, of date June 24, 1889, was a forgery. The special judge (Hon. W. W. Williams of Prestonsburg, Ky.), who was designated to try the case, and who did try it, overruled the demurrer filed to the petition, and upon final submission sustained the prayer therein, and quieted plaintiff's title, and cancelled the contested 1889 deed and to reverse that judgment defendant prosecutes this appeal.

As stated, a number of collateral questions are presented by the record, among which are: That, since there was no attack in the petition of the certificate of the deputy county court clerk, J. D. Wolford, either upon the ground of its fraudulent execution or its forgery, the petition was defective, and the demurrer filed thereto should have been sustained; that plaintiffs are both barred and estopped by time and by their conduct from maintaining the action; that the court erred in overruling defendant's objections to the testimony of Mrs. Vashti Wolford, upon the ground, among others, that the agent and representative of the grantee in the attacked deed was dead at the time her testimony was given, and, under the provisions of 606 of the Civil Code of Practice, she was incompetent as a witness, and, for the same reason, and also for the additional one that the certificate of acknowledgment was not attacked in the petition, the testimony of J. D. Wolford, the deputy county court clerk, was incompetent, and the objections to his testimony should have been sustained. Other questions are also presented, but, as stated, we have concluded to confine the discussion to the one issue of forgery, or validity, of the 1889 deed.

Since the first enactment of statutes for the recording of conveyances to property, courts generally have construed the record, when they were acknowledged with a valid certificate, or other statutory evidence of their due execution, as furnishing strong presumptive evidence of their execution, and the texts of standard authors are quite uniform to the effect that in such cases the burden is upon the one contesting the validity of the recorded instrument to prove the facts relied on as a

basis of the contest. Furthermore, it is equally well settled that the burden must be sustained by clear and convincing testimony, and some of the courts announce the doctrine that, to overcome such presumption, the weight of the testimony introduced by the burden bearer should be equal to that necessary for a conviction in a criminal prosecution; i. e., belief beyond a reasonable doubt.

We do not now determine that the latter requirement is essential, but in a great number of cases this court has followed the general rule as first above outlined. See 26 R. C. L. 199, sec. 56; 1 C. J. 894, sec. 277, and page 896, sec. 284. The text in the latter publication at the first reference says:

> "With one possible exception, the courts are all agreed that a bare preponderance of evidence is not sufficient to overcome the presumption in favor of a certificate of acknowledgment regular on its face; nor is loose and inconclusive evidence merely creating a doubt as to the truth of the certificate or contradicting it by implication only, sufficient, but a certificate regular on its face can be overthrown only by evidence so clear, strong, and convincing as to exclude all reasonable controversy as to the falsity of the certificate. Indeed, some of the cases go to the extent of requiring the same degree of proof as is necessary in criminal cases, that is, proof beyond a reasonable doubt."

The "one possible exception" is the case of Carver v. Carver, 97 Ind. 497. The reason given for the rule is stated in the text immediately following the excerpt, and which is, that the verity of the record or registration is "essential to the security of title," and which security should not be disturbed or the instrument avoided "by the grantor's individual oath or by anything short of clear and convincing evidence. . . . Public policy, as well as individual security, require that the ownership and peaceful possession of land should be subjected to no such hazard."

We have found no text to the contrary, and, in the case of Duff v. Virginia Iron, Coal & Coke Co., 136 Ky. 281, 124 S. W. 309, we had before us a question almost, if not quite, on all fours with this one. The wife, as a grantor in the conveyance there involved, sought to avoid it on the ground of forgery as to her, and she testified positively that she did not execute it, and sustained her

denial by some corroborating testimony; but we held that:

> "It will not do to lightly set aside the certificate of such an officer. To authorize its overthrow, the court should have before it such evidence as will leave no doubt that the officer had been guilty of fraud or mistake."

It is true that there was a question of estoppel in that case, and also, perhaps, one of ratification, but the excerpt we have taken from the opinion was based upon no such considerations.

In the case of Banner v. Asher, 183 Ky. 24, 207 S. W. 703, the involved deed was acknowledged before two subscribing witnesses, as our statute permits, and it was sought to be avoided upon the ground that the grantors did not execute it, but we held otherwise, and in doing so we said:

> "We do not think the proof in this case sufficient to overcome the presumption of validity and regularity incident to the acknowledgment and recordation of the instrument. As said in Rockcastle Mining, Lumber & Oil Co. v. Isaacs, 141 Ky. 80 (132 S. W. 165), 'To overcome a deed which purports to be signed and acknowledged by the grantors and is thereafter put to record, the evidence must be clear and convincing.'"

Other cases from this court, and almost an unlimited number from others, could be cited in support of the two propositions, i. e., that the burden is on the contestant to avoid a recorded deed purporting to have been duly acknowledged, and that to sustain it the evidence must be clear and convincing. But it is unnecessary to incumber this opinion with further citations supporting the two propositions. Having ascertained the law in such cases, our next task is an inquiry into the evidence produced at the hearing of this case.

Mrs. Wolford testified that she did not sign the Stras deed, but her recollection of contemporaneous events and of more or less similar contemporaneous transactions was shown to be nondependable. The deputy county court clerk who, as we have said, was the brother of the masculine grantor in the contested 1889 conveyance, testified that he did not take the acknowledgment, and he gave two reasons therefor: (a) That about

nine days from that date his wife gave birth to a child, and that it was his customery habit of remaining about his home on such occasions for that much or more time preceding and following such happy domestic events, and for that reason he felt sure that he did not take acknowledgment, and, (b) that in the copy of the contested deed submitted to him his name was spelled with one "f" (Wolford) instead of with two "f's" (Wolfford), which latter was the way he spelled it. He, however, stated that his brother, the grantor in the contested conveyance, and the other members of his family spelled the name with one "f," and it was shown that other deeds which he admitted that he certified to taking the acknowledgment were recorded in the county clerk's office, and on the record his name was spelled with only one "f," although in his certificate of acknowledgment he spelled it with two "f's." Those two facts were quite convincing to him that he did not take the acknowledgment, as was also the additional one that he did not remember that his brother or the latter's wife came to his house about the time of the acknowledgment, he residing at the time about four miles from the grantors in the contested conveyance. Clearly such nondependable incidents can be given but little credence after the lapse of nearly 30 years.

Supporting the contention of plaintiffs, it was proven that Jonathan Wolford, some time before making the questioned conveyance, deeded by absolute conveyance 20 acres of the 198-acre tract to another, and that he made no exclusion of that 20 acres in the Stras deed; but that omission is but a circumstance and is by no means conclusive. It was also proven by some witnesses that Jonathan Wolford, who died a little more than a year after executing the Stras deed, stated thereafter that he had not sold the coal from under his land, but such statements were incompetent because they were self-serving declarations, and the credibility of the witnesses who testified to them was largely impaired by cross-examination and by other facts and circumstances appearing in the case. The same may be said concerning other circumstances introduced for the purpose of supporting the contention of plaintiffs, but which we deem it unnecessary to set out in this opinion.

On the other hand, two brothers of the grantor in the Stras deed testified positively that their brother did sell

the coal under his land by and through negotiations with the two agents of Stras who were at that time procuring coal titles for him in that vicinity, and both of them are now dead. One of those brothers testified that he remembered distinctly of Jonathan Wolford and wife starting with one of the Stras agents to some place for the purpose of executing the deed, and that Jonathan Wolford said that, when he obtained the money therefor, he intended to buy a horse from one Dotson, and that in a few days thereafter he did buy the horse, and after that it was generally understood that the coal under the land was sold. The other brother testified that he heard his brother, Jonathan, say that he had sold his coal under his land to Litz, who was one of the Stras agents. It was furthermore shown that one of the heirs of Jonathan Wolford after the deed to Levine, trustee, etc., was executed, stated, when he was told that the coal under the land had already been sold to Stras, that he did not care, since Levine "would have the trouble with it." It was also shown that a number of the eight successive vendees of the coal following the Stras deed, if not all of them, surveyed, or caused to be surveyed, the tract of land upon which Mrs. Vashti Wolford and some of her children were then residing, and no objection was made thereto, except in one instance, but that objection by her was because she thought the survey was being made by others who were in litigation with her about the title to the land, and, when it was explained to her that the survey was not being made for that purpose, but concerning the title to the coal, she withdrew her objections, and consented thereto. Surely, if there had been no conveyance of the coal, as is now insisted, something would have been said, whether protesting in its nature or not, by the occupants of the surface of the land at the time or times when such surveys were made, and their utter silence with reference thereto would indicate a thorough knowledge of the purpose of the surveys, and consequent consent thereto.

Furthermore, as bearing upon the testimony of some of the witnesses, and especially that of the deputy county court clerk, it appears that Julius Wolford, his son, entered into some kind of arrangement or understanding with Green Wolford, a cousin and one of the surviving children of Jonathan Wolford, whereby the former would procure title to the coal under the tract of land involved through the assistance of the latter, and upon a

sale thereof the profits would be divided. After that understanding was perfected and carried out by the execution of the Levine deed, the record of the contested paper was discovered in the county court clerk's office, and Julius Wolford wrote to his father, and made inquiry if he had taken the acknowledgment, and the latter, with knowledge of the interest of his son, answered, in substance, that he did not, and that, if any such certificate was in existence, it was "a fraud." He did not say that it was a forgery, nor did he deny unequivocally that he had ever taken such acknowledgment, and such interest of Julius Wolford, Green Wolford, and relationship of the deputy county court clerk no doubt largely affected the credibility of the testimony of those three witnesses.

Another circumstance which, to our minds, tends to weaken the contention of plaintiffs, and to corroborate that of defendant, is the fact that Jonathan Wolford's brother took the acknowledgment of himself and wife to the attached deed, and which, strange to say, is put forward by counsel for plaintiff as a fact substantiating his clients' cause, but which to our minds has the opposite effect. The agents of Stras procured a number of deeds for him to coal under a number of tracts of land in that vicinity at about the same time, and the acknowledgments to those deeds were taken by another officer. If such agents forged the deed in controversy, the natural thing would have been to also forge the acknowledgment thereto in the name of the officer who took the acknowledgments of the other deeds, instead of that of the grantor's brother whose relationship would be an additional incentive for him to later repudiate the certificate. Besides, how did the agents know that he was a deputy county court clerk? On the other hand, Jonathan Wolford is shown in the record to have had great confidence in his brother for whom he worked, and, no doubt, he was thereby induced to have his brother take his and his wife's acknowledgment, and to thereby secure correctness in the execution of the deed (as he possibly thought), and at the same time to save the fees for taking the acknowledgment. It would have been a most unnatural thing for the grantee or those acting for him in procuring the deed to forge the name of a near relative of the grantor to the certificate of acknowledgment.

We deem it unnecessary to further incumber the record with a recitation of the testimony heard upon the

trial (a large portion of which, as we have seen, was incompetent), since we are driven to the conclusion that, under all of the facts and circumstances, viewed in the light of the legal rule, supra, plaintiffs failed to sustain their assault made upon the Stras deed, and that the court erred in sustaining it. To hold otherwise would not only ignore the strong presumption in favor of the verity of the record, but it would likewise imperil all the land titles of the country, which, after a long period of time, as is the case here, could be set aside by parole testimony, and the rights and equities of persons dealing with the property on the faith of such verity would be utterly destroyed.

It is to prevent such consequences that the burden and presumption, supra, have been approved by the courts, and which, as held by them, is in furtherance of a sound public policy. This record clearly convinces us that the contested deed was executed and acknowledged by the grantors therein as it purports to have been and which conclusion does not necessarily find that the witnesses who testified to the contrary perjured themselves. Such conclusion takes into consideration the known fact of the frailties of human recollection, which we all know becomes dimmed with the passing years, and which is a potent fact for consideration in a case where the intervening time is as long as 29 years, as is true in this case.

Wherefore the judgment is reversed, with directions to dismiss the petition and to adjudge defendant's title superior to that of plaintiffs.