## Kentucky West Virginia Gas Company v. Maynard.

(Decided February 19, 1932.)

MARTIN & SMITH for appellant.

A. E. AUXIER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On December 16, 1926, there was put on record in the Pike county court a paper purporting to be a gas and oil lease executed and delivered by James Maynard and his wife, the appellee and plaintiff below, Vicy Maynard to B. M. James, whereby the lessors conveyed to him all the oil and gas under their jointly owned tract of land estimated to contain fifty acres. The lessee paid therefor $1 upon the execution of the lease, and agreed therein to pay 50 cents per acre annually until development, which was payable quarterly each year and after development certain named royalties on the mineral product discovered. The lease was duly acknowledged by both lessors before Grady Bevins, a duly appointed acting and qualified deputy county court clerk under J. E. Runyan the duly elected and qualified county court clerk. It was sold and transferred through a number of mesne conveyances until the appellant and defendant below, Kentucky West Virginia Gas Company, became its owner.

On September 26, 1930, plaintiff filed this equity action against defendant in the Pike circuit court, and in her petition she alleged that she never executed or acknowledged the lease, and that as to her it was a forgery, since neither she nor any one authorized by her subscribed her name thereto, or acknowledged its execution, as stated in the acknowledging certificate, the latter of which she alleged was false in so certifying. The answer was a denial, and, after proof taken, and the cause submitted, the court sustained the prayer of the petition, and canceled the lease as to plaintiff's half undivided interest in the land, and also to the extent of her potential dower interest in her husband's half, and to reverse that judgment defendant prosecutes this appeal.

This is not a direct attack on the officer's certificate of acknowledgment, and, under the provisions of section 3760 of our present Statutes, it became the duty of plaintiff to expressly aver in her petition, which is a collat-

eral attack on the certificate, that it was made through fraud of some benefited party, or by the mistake of the clerk, and under numerous opinions of this court an attack based upon such grounds not only casts the burden upon the one making the attack to prove the relied-on grounds, but also that the evidence adduced to establish them should be clear and convincing; many courts and text-writers going to the extent of asserting the rule to be that the proof necessary to overcome the certificate of acknowledgment must be established beyond a reasonable doubt. Some of our later opinions approving that rule of practice in this character of case are, Eversole v. Kentucky River Coal Corporation, 189 Ky. 471, 225 S. W. 50, and Kentland Coal & Coke Co. v. Levine, 224 Ky. 75, 5 S. W. (2d) 280. A prior and somewhat recent one is that of Duff v. Virginia Iron, Coal & Coke Co., 136 Ky. 281, 124 S. W. 309.

In those opinions others from this court to the same effect will be found, as will also be found texts from standard writers on the subject. The rule is a wholesome one, and is necessary to preserve the stability of titles to land without which they would not only be continuously disturbed, but also inducements would be extended to the grasping and selfish to cancel solemnly executed instruments of title whenever it was to their financial advantage to do so. It was to circumvent such inducements and to preserve to the grantees the rights thereby acquired that the rules announced were promulgated and applied, and which, we repeat, are founded in a sound public policy.

With such considerations in mind, it becomes necessary to examine the testimony in this case to see whether or not it measures up to such requirements, so as to entitle the grantor to the cancellation sought. To begin with, it should be remembered that the attacked lease in this case was executed and recorded in the proper office for more than four years before plaintiff attacked it in this action. In the meantime, the different owners throughout that period paid quarterly the annual rental of 50 cents per acre each year, and which the testimony indisputably shows was the highest current price for such leases at the time this one bears date. Plaintiff knew, throughout that period of her husband collecting such rental, many of the checks being delivered to her, as was also the first one for the down cash payment of $1,

and the proceeds of the checks that were not delivered to her went into the family treasury and were used in paying household expenses. A short while before this action was filed, the annual rental for deferred development for this character of lease in that vicinity increased from 50 cents per acre to $1 per acre, and which information plaintiff duly acquired. She then for the first time became active, and dissatisfied as well, and for the first time made inquiry as to whether or not the lease purported to have been executed by her, and she testified that the reason why she was dissatisfied with the lease was because such annual rental was too small.

It is also an established fact that a man by the name of Davis, about the time of or just before the filing of the action, began the taking of similar leases on land in the vicinity of the home of plaintiff and her husband, surrounding the tract upon which the attacked lease was given, and he was busy in examining the records of leases in that vicinity taken by James about the same date of the one here involved, and acknowledged by the same deputy county court clerk, all for the purpose of ascertaining their validity, as well as the persons by whom they were executed. A sister-in-law of plaintiff, who lived near to her and visited her frequently, was at least aware of such activities of Davis, and the inference is not an unnatural one that plaintiff herself became informed of such efforts of Davis. She admits that she learned through her sister-in-law, and perhaps others, that Davis and others were then paying an annual rental of $1 per acre, since he procured a lease from the husband of her sister-in-law at that price along about that time. It is not at all improbable that such facts, of which it is shown that plaintiff was aware, produced the X-ray picture of the hidden animal in the woodpile that furnished the incentive for the filing of this action.

Defendant testified that she neither signed nor acknowledged the lease attacked in this case, and which is practically all the testimony she offered to support the allegations of her petition. She does not accuse any particular one of having forged her name thereto. She said she did not sign it, nor did she authorize another to do so. In support of that denial, she introduced the same sister-in-law, above referred to, who testified that she was at plaintiff's residence on the day the involved lease bears date, and that Bevins, the deputy county court clerk, who

certified to its acknowledgment, was not at plaintiff's house while witness was there, and which was only an hour or so in the afternoon of that day. Witness furthermore stated that plaintiff's husband brought a paper to his home a while before witness' departure, and he then told his wife that it was a lease of the oil and gas on their farm, when plaintiff said: "You ought not to have made it," but at the same time the husband delivered to plaintiff the check for the cash payment on the lease. Another witness who testified for plaintiff said that he and a number of others were in the woods near the mouth of a creek not far from plaintiff's residence at about the date of the attacked lease, and Bevins approached the crowd riding a mule, and while there prepared a paper that plaintiff's husband signed, after which the clerk departed; but whether he went to plaintiff's home, and later on that day or on a subsequent day obtained the signature of plaintiff to the lease, was not pretended to be denied by that or any other witness except plaintiff herself.

On the other hand, the deputy county court clerk who took the acknowledgment could not state with absolute verity the precise place or the exact time that plaintiff subscribed and acknowledged the lease before him; but he testified that he was positively assured that plaintiff did execute and acknowledge it after her husband had done so, as contained in his certificate of acknowledgment thereto. He had no interest whatever in the lease, and was not being paid by James, the lessee, by the acreage for such leases as he obtained, nor by their number, but only for the time consumed, and there is no incentive whatever, even remotely appearing, to sustain any charge of fraud or any alleged mistake.

In addition thereto, defendant's counsel in his cross examination of plaintiff procured her to write her name, "Vicy Maynard," four successive times on a blank piece of paper, and filed them as a part of her deposition, and the originals constitute a part of the record before us. A comparison of them with the signature "Vicy Maynard" appearing on the original lease (which is also a part of the record and before us) is most persuasive that they were all made by the same person. Of course, there are slight differences between each of the four signatures made by plaintiff, while giving her deposition, as well as the same character of differences between each

of them and her signature to the lease. But they are minor ones consisting chiefly in slight variations in curvatures and the joining of letters, rather than a fundamental departure from identity of general contour and structure boldly present in each of the signatures and strongly indicating that they were made by the same person. The same characteristics of identity of writing are present in each of them. It is true that the four signatures made during the taking of plaintiff's deposition appear to be slightly more nervous than the one to the lease; but it should be remembered that they were executed nearly five years apart, and when plaintiff was that much older than she was when the lease was executed. Besides, the surrounding circumstances, as well as possible difference in writing facilities, could easily account for such slight differences. The testimony above referred to, that plaintiff was not present at the place and upon the occasion that her husband was supposed to have signed the lease, is not sufficient to overcome the clerk's certificate, even if it had stated that she was present at that particular time and on that particular occasion, since its only effect was to establish an alibi in favor of plaintiff, and this court in the case of Birkhead v. Kyle, 13 Ky. Op. 42, said:

"If an alibi on the part of the married woman is established showing that she could not have been at the clerk's office on the day the acknowledgment bears date, is sufficient to invalidate the title, it would open the door to a litigation out of which many titles now secure would be wrested from the real owner."

Upon the whole, we regard the testimony in the record as falling far short of that required by the cases supra, to set aside and annul the certificate of the acknowledging officer, and to be followed by a cancellation of the instrument attacked in the petition.

Wherefore the judgment is reversed, with directions to set it aside and to dismiss the petition.