**HI HAT ELKHORN COAL COMPANY,**
a corporation, Plaintiff,

v.

Annabelle Hayes **KELLY,** Herman Kelly, Claude Hayes, Edna Hayes Stewart, Edward Stewart, Bun Hayes, Arlie Hayes, Laura Hayes, Fred Hayes, June D. Hayes, Opal Moore Hayes and Opal Brown Hayes, Defendants.

No. 611.

United States District Court
E. D. Kentucky,
Pikeville Division.

May 3, 1962.

∞218

Joe Hobson, Prestonsburg, Ky., for plaintiff.

Paul E. Hayes, Prestonsburg, Ky., for defendant.

SWINFORD, District Judge.

The plaintiff, a West Virginia corporation, is the owner of all the coal and mineral rights under a 15.56 acre tract belonging to the defendants on which they have constructed dwelling houses. The plaintiff is asking the court to enjoin the defendants from interfering with its alleged right to relocate and construct a new truck road thirty feet wide with a five foot ditch line on each side through the lands of the defendants in order to make space to connect its tipple and preparation plant by railroad with the main line of the Chesapeake and Ohio Railway Company and to give ingress, egress and regress to the people who live above its tipple and preparation plant. The railroad spur is to occupy the present truck road.

The defendants in a counterclaim allege that their property has been greatly damaged and impaired in value and that there is detriment to the health and comfort of the defendants and their families by reason of the arbitrary, wanton and malicious manner and methods used by the plaintiff in the preparation of its coal and they ask damages for this alleged loss and nuisance.

The primary issue involved is the right of the plaintiff to use the surface of this 15.56 acre tract of land for the movement of coal other than that produced on the leasehold for the purpose of processing it for sale. The rights of the respective parties rest squarely upon the terms of the deed by which the predecessors in title of the defendants acquired the surface rights in the land.

On April 3, 1929 the Elk Horn Coal Corporation (which was the predecessor in title of all the litigants in this case) conveyed to W. P. Hays (immediate ancestor and predecessor in title to the defendants) the 15.56 acre tract of land involved. This deed was put to record in the office of the Floyd County Court on September 17, 1929. The reservation pertaining to mineral rights was in words and figures as follows, as copied from Defendants' Exhibit 11:

"There are excepted and reserved from this conveyance unto the said Elk Horn Coal Corporation, its successors and assigns, all coal, mineral and mineral substances and *prducts* of every kind and character, including all oil and gas and all stone, *sale*, slate, fire clay, salt waters and other minerals and mineral substances and all *produscts* and *somvngations* of same, *wherther* or not enumerated herein, in, on and underlying said tract or *pardel* of land hereinabove described; and there is further excepted and reserved unto the *Lekhorn* Coal Corporation, its successors and assigns, all and every right to mine, drill, explore for, extract and remove all of said coal and other minerals and produsts beneath the surface of said land, together with all modern mining rights, easements and privileges deemed necessary or

convenient by the said Elk Horn Coal Corporation, its successors and *assings*, to be exercised in the operations for the removal of said coal and minerals, mineral substances and prod*uscts* including the right of ingress, egress and regress, in, on, to, over, under and through said land and every part *ehreof*, and the right to develop, *explit*, drill, mine, pump and therefrom remove all of said coal, minerals, oils, gases and *subterernean* substances and products in, on and underlying said land or any thereof in any and every manner that may, by Elk Horn Coal Corporation, its successors and assigns, be deemed necessary or convenient for the full and free exercise of using, enjoying or operating said minerals, rights and easements and privileges herein excepted and reserved; and also excepting and reserving unto Elk Horn Coal Corporation, its successors and assigns, occasioned by or resulting directly or indirectly from the use or exercise of *thersaid* properties, rights and privileges herein excepted and reserved."

It is observed that this conveyance comprehends every conceivable operation of a mineral lease on this 15.56 acre tract. It is contended by the plaintiff that it also, by words and reasonable implication and interpretation, gives the right to process coal brought from other of the plaintiff's properties. There is nothing in the record to indicate that there is any development or endeavor to extract coal from the 15.56 acre tract which is apparently negligible in the plaintiff's extensive operation. The tipple was at the time of the trial of this action being used at the rate of from 2200 to 2500 tons of coal per day. It was planned to increase the production to 3000 tons per day by addition of the railroad spur. The coal is trucked in from other properties owned by the plaintiff and mined in some cases by operators other than the plaintiff.

In the absence of an express agreement, owners of coal leases cannot use the surface owned by another in producing, cleaning, marketing or in any way handling coal produced on lands of another. The mining rights and privileges in a deed relate only to coal produced from the land covered by the instrument. Marlowe v. Marcum, 294 Ky. 405, 171 S.W.2d 997; Flannery v. Utilities Elkhorn Coal Co., 282 Ky. 355, 138 S.W.2d 988; Pike-Floyd Coal Co. v. Nunnery, 232 Ky. 805, 24 S.W.2d 614.

In the recent case of Wiser Oil Company v. Conley, 346 S.W.2d 718, the Court of Appeals of Kentucky said: "It is well settled in Kentucky, as elsewhere, that in the absence of an express agreement, the mineral owners or lessees cannot use the surface for the production of minerals from other lands."

The language quoted from the deed of April 3, 1929 cannot be construed to give a right to use the surface of the defendants' property for the handling of coal from other leaseholds or mining operations of the plaintiff or any other person or corporation. Newman v. Hi Hat Elkhorn Coal Company, 6 Cir., 298 F.2d 119 (1962); Hi Hat Elkhorn Mining Co. v. Newman, Ky., 352 S.W.2d 71.

While still contending that the language in the deed as quoted is sufficient to give the plaintiff the rights asked, the plaintiff takes the further position that the deed of April 3, 1929 to Mr. Hays and recorded in Deed Book 82, page 506, in the Floyd County Court Clerk's office, was not the deed as written and delivered to Mr. Hays; that through some means, either by negligence or fraudulent intent, a substantial portion of the deed was not recorded. The plaintiff thereupon offers proof in support of its contention and files as Exhibit 1 a photostatic copy of a carbon copy of the deed that was in the file and custody of Mr. J. W. Howard, attorney for the grantor, the Elk Horn Coal Corporation, who, it is stated, had retained a copy since 1929. In all particulars it appears to be a deed executed by officers of Elk Horn conveying the 15.56 acre tract to

W. P. Hays. This document contains the following language continuing from the above quoted undisputed portions of the deed:

" * * *; and also excepting and reserving unto Elk Horn Coal Corporation, its successors and assigns, the right to move and/or remove over, under or through said land, or any thereof, any coal, minerals or mineral substances and products therefrom or from any other lands now owned or that may hereafter be acquired by the said Elk Horn Coal Corporation, its successors and assigns; and also excepting and reserving unto the said Elk Horn Coal Corporation, its successors and assigns, all of the timber upon said tract of land, together with full and complete right to cut and remove same, or any thereof, from said land at any time or times within the period of five years next after the date hereof, together with all of the easements and privileges that may be necessary or that may, by the said Elk Horn Coal Corporation, its successors and assigns, be deemed necessary or incidental to the cutting and removal of said timber; and said Elk Horn Coal Corporation, its successors and assigns, shall be free from any and all liability or claims for damages to the party of the second part, his heirs or assigns, occasioned by or resulting directly or indirectly from the use or exercise of the said properties, rights and privileges herein excepted and reserved."

It was the practice of Elk Horn to execute an original of each deed and a number of carbon copies according to the demands of the particular situation. The negotiations for sale of a piece of land took place in Kentucky; the deed was also drafted here but sent to the central offices of Elk Horn in New York or Cincinnati where the officers signed it for return to Kentucky and delivery to the grantee. The carbon copy from which Exhibit 1 was made has not been out of the company files at any time from 1929 until commencement of this litigation.

Exhibit 11 for defendants presents quite a different situation in regard to the reserved right to haul coal onto the Hayes tract from other property. This exhibit is a certified copy of deed recorded in the county clerk's office. No mention is made in this exhibit of any right to haul coal from other property. Testimony by Mr. Howard reveals that it was never the custom of Elk Horn to record deeds on properties that it sold; accordingly it must be concluded that it was W. P. Hays that tendered this deed for recordation. The deed that was delivered to W. P. Hays was lost in a fire which destroyed the Hays home some years after 1929.

■ A determination as to the plaintiff's right to use the Hayes property in connection with the production of coal from other leaseholds involves an inquiry as to one fact only: the language of the conveyance by which W. P. Hays acquired title to the 15.56 acre tract. The best evidence would of course be the very deed that was delivered to him on April 3, 1929. The absence of this leaves two alternatives: one, the county clerk's record; the second, the files of Elk Horn. It is the rule in Kentucky that a simple preponderance of evidence is not enough to overcome the presumption that the deed on file in the public records is a true and complete testimonial as to the terms of the conveyance. Turner v. Howard, 277 Ky. 172, 126 S.W.2d 135 (1939); Kentland Coal & Coke Co. v. Levine, 224 Ky. 75, 5 S.W.2d 280 (1928). K.R.S. 61.060 provides that a fact stated in his official capacity by a public officer required by law to make such statements may be called into question only by a direct court action against the officer or by allegation of fraud or mistake in a court action against the party benefited by the statement. This statute would seem particularly applicable to the present case in view of the direct relation of the result in this case to the security of recorded titles. The rule is announced in

Kentland Coal & Coke Co. v. Levine, supra, is that:

"* * * 'a bare preponderance of evidence is not sufficient to overcome the presumption in favor of a certificate of acknowledgment regular on its face; nor is loose and inconclusive evidence merely creating a doubt as to the truth of the certificate or contradicting it by implication only, sufficient, but a certificate regular on its face can be overthrown only by evidence so clear, strong, and convincing as to exclude all reasonable controversy as to the falsity of the certificate. Indeed, some of the cases go to the extent of requiring the same degree of proof as is necessary in criminal cases, that is, proof beyond a reasonable doubt.'" (id. at 78, 5 S.W. 2d at 281)

■■ What evidence has the plaintiff produced in order to satisfy this stringent requirement? A carbon copy of a deed to W. P. Hays describing the 15.56 acre tract and in all essential respects identical to the deed on file in the clerk's office except for the omission of the crucial language reserving to Elk Horn the right to haul coal from other properties onto the land. For certain purposes at least, a carbon copy may be treated as the original document. Gus Dattilo Fruit Co. v. Louisville & N. Railroad Co., 238 Ky. 322, 37 S.W.2d 856 (1931). But we are not only concerned here with the wording of what purports to be a deed from Elk Horn to Hays; we must also draw inferences as to the place of this document in the transaction by which Hays acquired title to the 15.56 acres. We must above all else know what document was delivered to Hays, that is, what document passed title. We must know what was presented for recordation. We must also know who presented the deed for recordation. The language of a deed bereft of any information as to its antecedent circumstances proves nothing concerning the state of the title to the land described in it. Elrod v.

Schroader, 261 Ky. 491, 88 S.W.2d 12 (1935).

The record informs us that Plaintiff's Exhibit 1 was not delivered to Hays. It further informs us that something different from Exhibit 1 was presented to the county clerk for the record, for the whole evidence as to what was given to the clerk consists of his certificate in the margin of Defendants' Exhibit 11. We know that the testimony of the plaintiff as to what occurred in connection with the conveyance from Elk Horn to Hays does not proceed from specific recollection of the witnesses; the critical facts transpired over thirty years before the trial. The witnesses for plaintiff rely upon their memories of general office practices by which land transactions were effected. Even accepting these practices as having evidential value, there is much to cast doubt upon their weight.

■ There is evidence that on some occasions a deed was executed by Elk Horn officers in New York and sent to the Prestonsburg office along with signed carbon copies; that prior to the delivery there were changes in the transaction and that a new instrument would have to be prepared and executed. The evidence is not altogether clear that the signed carbon copies were destroyed or that some other disposition was made of them that would positively exclude any possibility of their being found in the Prestonsburg files years later when everyone had forgotten the details of the transaction to which they related. Indeed, J. W. Howard testifies on this point as follows: "I have had to re-write papers lots of times when a trade was changed before we finally closed and instances like that we always kept them in the files and have the other executed copies to show what or why it was done." (Deposition, filed March 24, 1961, page 27) Accepting this as true and making the usual allowances for human error, the picture is of anything but office practices which proceed with such inevitable routine that all that is necessary to have recollection of a particular event is to recall the practice.

The extraordinary burden of proof required by Kentucky law is not supplied by the introduction of what purports to be a deed without some information from personal knowledge of the transaction that would establish that Plaintiff's Exhibit 1 does in fact represent the conveyance.

Counsel for plaintiff argues that the Hayes heirs are not purchasers for value without notice. The short answer to this is that they do not have to be. In order for this contention to have relevance to the present controversy it must first be proved that there exists some outstanding interest in favor of plaintiffs. As before noted the plaintiff has failed to do this.

■ It is argued by plaintiff that it is patent from an examination of Defendants' Exhibit 11 that there is language missing therefrom. As to this there are two answers. The first is that an omission is not patent but only arguable. The questioned portion of the exhibit is:

"* * *; and also excepting and reserving unto Elk Horn Coal Corporation, its successors and assigns, occasioned by or resulting directly or indirectly from the use or exercise of thersaid properties, rights and privileges herein excepted and reserved."

To be sure the clause quoted is nothing more than double talk. But from a grammatical standpoint there is nothing lacking. The predicate is "excepting and reserving"; the object is "rights and privileges herein excepted and reserved". The phrase commencing with "occasioned by" modifies "excepting and reserving". From a rhetorical point of view the clause is a nullity but there is nothing in it that would necessarily put a person to inquiry. The instrument generally is not a model of succinctness, for in an effort to be exhaustive of every right that could be used in the mining of coal the draftsman has multiplied surplusage upon surplusage.

The second answer to the missing language argument is that there is no evidence from which to supply the omission had one been proved. There is nothing in the nature of things that compels the assumption that an omission in a reservation of mineral rights signifies an intention to reserve the right to haul coal from other properties onto the leasehold.

The comparative ease as between the parties involved herein by which this litigation could have been avoided is a further factor in favor of the Hayes heirs. Elk Horn could have examined the clerk's records to see that there was no variance between the deed as delivered and the instrument placed on public file. The plaintiff could have avoided any contest over its rights by checking the title to the land before it took an assignment of the mineral rights. On the other hand Hays and his heirs were powerless to insure that Elk Horn did not have in its private files a carbon copy of an instrument purporting to represent the transaction but different in respect to the existence of the rights which gave rise to the present controversy.

■ A further reason for denying plaintiff the relief it seeks is found in K.R.S. 413.130(3) barring actions for relief from fraud or mistake after ten years from the date of the contract. Plaintiff argues that this is not an action for relief from fraud or mistake inasmuch as any mistake involved here is not a part of the transaction between the parties but is one that was made by the clerk that recorded the deed. Such a mistake would not be binding on the parties to be sure, but the argument ignores the provisions of K.R.S. 61.060 which provide that in any action between private litigants, a fact stated in an official capacity by a public officer required by law to make such statement is conclusive unless fraud or mistake is alleged. In Kentland Coal and Coke Co. v. Levine, supra, the acknowledgment of a notary to the signature on a deed was held to come within this statute. The facts here do not seem to present any basis for a distinction. Accordingly, in order for the court to find that the language of Defendants' Exhibit 11 represents a mistake on the

part of the clerk who copied it into the public record this action would have to be treated as one seeking relief from fraud or mistake that is barred by the ten-year limitation.

 The defendants must fail on their counterclaims. With the possible exception of Mr. Kelly, all of the defendants acquired their property after the tipple and cleaning plant were built and in operation. Those who acquire land with knowledge of the existence of damaging permanent structures will not thereafter be allowed to recover for any damages to the land since they are presumed to have obtained the benefit of reduced value by the amount the prior owner could have recovered. In other words, if the property of the defendants is diminished in value by reason of this coal operation, that same dimunition existed at the time they took their deeds to the lots and built their houses. The Court of Appeals for the Sixth Circuit discussed this question exhaustively in an opinion on a case appealed from this court in 1949. In the opinion are stated numerous Kentucky authorities in support of the rule I have just stated. See Kentucky West Virginia Gas Co. v. Lafferty, 6 Cir., 174 F.2d 848, 10 A.L.R.2d 661 (1949).

In addition to a denial of the damages for the reasons just stated, the record is barren of any proof of damages. Mrs. Kelly testified that her property had been damaged $3,000. She did not qualify as one who knew the value of property in that locality nor did she limit her answer to the difference between the fair and reasonable market value before and after the alleged damage. Neither is their sufficient evidence to sustain a fact that the plaintiff has departed from the usual practices in the operation of the tipple and preparation plant so as to constitute an unreasonable use. There is not sufficient evidence that dust descends upon the defendants' properties in such extraordinary quantities as to cause unreasonable injury to them. Louisville Refining Company v. Mudd, Ky., 339 S.W.2d 181 (1960). No proof is offered by the defendants to establish what is usual or expectable in these circumstances or that the instant case presents any unusual situation.

In the opinion of the court the plaintiff's complaint and the defendants' counterclaim should be dismissed and an order to that effect is this day entered.

This opinion sets forth sufficient findings of fact and conclusions of law. Rule 52(a), Rules of Civil Procedure, 28 U.S.C.A.