**REGIONAL AIRPORT AUTHORITY OF LOUISVILLE AND JEFFERSON COUNTY, Plaintiff,**

v.

**LFG, LLC., et al., Defendants.**

**Civil Action No. 3:98CV327–S.**

United States District Court, W.D. Kentucky.

March 28, 2003.

---

William Patrick Stallard, Robert W. Griffith, Stites & Harbison, Louisville, KY, Judith A. Villines, Stites & Harbison, Frankfort, KY, Mark R. Feather, Charles S. Cassis, Douglas W. Langdon, Amy D. Cubbage, Frost Brown Todd, LLC, Larisa Elin Gilbert, Louisville, KY, for plaintiff.

Bradley Eugene Dillon, Hiram Ely, III, Mark S. Riddle, Eric A. Braun, Greenebaum Doll & McDonald, Louisville, KY, Carey R. Perlman, Laurence H. Levine, Karl A. Karg, John C. Merchese, Latham & Watkins, Chicago, IL, Ruby D. Fenton–Iler, Pitt, Fenton & Smith, Louisville, KY, for defendants.

### *MEMORANDUM OPINION*

SIMPSON, District Judge.

This matter is before the court on motion of the defendant, LFG, LLC ("LFG") for judgment on the pleadings as to Counts IV, V, VI of plaintiff, Regional Airport Authority of Louisville and Jefferson County's ("RAA") First Amended Complaint. (DN 149). For the reasons

set forth below, defendant's motion will be **GRANTED.**

## BACKGROUND

This case arises from the RAA's May, 1993 acquisition of property owned by defendant LFG. The RAA acquired the 131–acre parcel ("Site") by condemnation, as part of the Louisville Airport Improvement Project, which included plans to add a new west runway on the Site.

LFG acquired the property from defendant Navistar International Transportation Corporation, formerly known as International Harvester Company, ("Navistar") in 1985. Navistar operated a foundry, forge and assembly plant on the Site. RAA alleges that LFG and Navistar regularly used metals, fuel oils, lubricating oils, hydraulic oils, solvents, PCBs, paints, acids, caustics, and phenols, in their active operations, which were disposed of on the Site. It further alleges that LFG "improperly handled and disposed of regulated asbestos-containing materials at the Site."

Prior to acquiring the Site from LFG, the RAA hired an environmental consulting firm to investigate the Site and recommend action for any contamination. After acquiring the Site, RAA engaged another environmental consulting firm to again investigate and recommend appropriate action for environmental contamination. Over the course of several years, the RAA has incurred substantial costs cleaning up environmental hazards, including asbestos, left behind on the land.

To recover some of these costs, RAA filed its original complaint in this action on May 15, 1998 against LFG and Navistar. The complaint alleged violation of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq* ("CERCLA")(Counts I, II). The RAA also alleged a claim under the Kentucky Superfund Act, KRS 224.01–400 (Count III), and brought several state law claims, including private nuisance (Count IV), public nuisance (Count V), negligence per se (Count VI), and equitable indemnification (Count VII). Upon motion of the defendants, LFG and Navistar, we dismissed Counts III and VII of RAA's First Amended Complaint. We found that RAA had not stated a claim under the Kentucky Superfund Act because "the statute's application is clearly limited and does not extend to private causes of action for joint and several liability or contribution." We further rejected RAA's claim that they could recover under KRS 446,070, which codifies the common law concept of negligence *per se,* recognizing that the RAA was not among the class of persons the Kentucky Superfund Act intended to protect. We also dismissed RAA's equitable indemnification claim because we found that CERCLA provides adequate legal remedy.

The motion at bar seeks to dismiss RAA's three remaining state law causes of action against LFG.[1] In Count IV, RAA contends that "disposal, dumping, abandonment, and discarding of hazardous substances, including asbestos, in and on the Site" unreasonably interfered with its use and enjoyment of the Site which allegedly constituted private nuisance as codified in KRS §§ 411.530 and 411.540. In Count Five, RAA asserts that such dumping and disposal of hazardous substances also constituted a public nuisance to which it is entitled to relief. In Count Six, the RAA alleges that LFG "improperly handled and disposed of regulated asbestos-containing materials at the Site in violation of federal statutes and regulations and Jefferson County Air Pollution Control District regulations," and that such conduct constituted negligence *per se.*

---

**1.** The First Amended Complaint does not assert these causes of action against Navistar.

## LEGAL ANALYSIS

### A. Standard of Review

LFG brought this motion under Fed. R.Civ.P. 12(c) for judgment on the pleadings.[2] We review a motion made pursuant to Fed.R.Civ.P. 12(c) under the same standard applicable to a motion to dismiss made pursuant to Fed.R.Civ.P. 12(b)(6). *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir.2001). In reviewing the motion, we must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of its claim that would entitle it to relief. *Id.*

### B. Private Nuisance

RAA seeks damages for private nuisance under KRS §§ 411.530 (permanent nuisance) and 411.540 (temporary nuisance), which codify common law private nuisance. Under those provisions, a nuisance:

> shall exist if and only if a defendant's use of property causes unreasonable and substantial annoyance to the occupants of the claimant's property or unreasonably interferes with the use and enjoyment of such property. KRS §§ 411.530, 411.540.

■ The underlying principle of the tort of private nuisance is that an owner of property may not use his property in such a way as to unreasonably injure another's property. *Kentland–Elkhorn Coal Company v. Charles*, 514 S.W.2d 659, 663 (Ky. 1974). Put another way, "each property owner must use his own property in such a manner as to not interfere with that of his neighbor." *Gem–Elkhorn Coal Co. v. Everidge*, 309 S.W.2d 755, 756 (Ky.1958).

RAA has urged us to extend private nuisance beyond its traditional purpose of resolving conflicts between competing, simultaneous uses of neighboring property, and to recognize a cause of action by a current owner of a parcel of land against the former owner of the same parcel for environmental contamination.

There is no case in Kentucky that has considered whether private nuisance should be extended to allow recovery between subsequent landowners of the same parcel. In the absence of a controlling decision on the issue at hand, we must attempt to predict how Kentucky courts would address the issue. *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1150 (6th Cir. 1988).

■ Neither party has cited, nor have we found, a Kentucky case on this issue. We believe that were a Kentucky court to consider this issue, it would follow the lead of the majority of the courts, which have consistently rejected allowing a subsequent landowner to recover in private nuisance from a prior land owner. *Andritz Sprout–Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 626 (M.D.Pa.1997). *See, e.g., Dartron Corp. v. Uniroyal Chem. Co.*, 893 F.Supp. 730, 741 (N.D.Ohio 1995) (rejecting private nuisance claims brought by landowners against their predecessors in title); *Wilson Auto Enter., Inc. v. Mobil Oil Corp.*, 778 F.Supp. 101, 106 (D.R.I. 1991) (finding that "[a] buyer of property cannot assert a private nuisance claim against a seller . . . for contamination that occurred before the sale"); *The Sherwin–Williams Co. v. Artra Group, Inc.*, 125 F.Supp.2d 739, 758 (D.Md.2001) (rejecting a nuisance claim by a subsequent occupier of property); *Wellesley Hills Realty Trust v. Mobil Oil Corp.*, 747 F.Supp. 93, 98–99

---

**2.** RAA attempted to include matters outside of the pleadings in its responsive memorandum, however we exclude them as unnecessary to a determination in this matter.

(D.Mass.1990) (holding that "a vendee of land does not have a private nuisance action against a vendor for its contamination of the property prior to the sale"); *Truck Components, Inc. v. K–H Corp.*, 1995 WL 692541, **12–13, 1995 U.S. Dist. LEXIS 17444, *34–*36 (N.D.Ill., November 22, 1995) (determining that a nuisance action can only be brought by contemporaneous owners of neighboring properties and not by a subsequent owners against a prior owner); *Chase Manhattan Bank, N.A. v. T&N plc*, 905 F.Supp. 107, 125 (S.D.N.Y. 1995) ("[W]here the source of the nuisance exists on the plaintiff's own property the requisite invasion is absent and no action for nuisance may be maintained"). Only one court has actually allowed a present owner of land to maintain a private nuisance action against a former owner for contaminating the property. *Mangini v. Aerojet–General Corp.*, 230 Cal.App.3d 1125, 281 Cal.Rptr. 827, 832 (1991).

Moreover, Kentucky has not allowed land owners to recover for a private nuisance where the land was purchased with knowledge of the nuisance's existence. "Those who acquire land with knowledge of the existence of damaging permanent structures will not thereafter be allowed to recover for any damages to the land since they are presumed to have obtained the benefit or reduced value by the amount the prior owner could have recovered." *Hi Hat Elkhorn Coal Co. v. Kelly*, 205 F.Supp. 764, 770 (D.C.Ky.1962).

Because we believe that a Kentucky court would not recognize a cause of action in private nuisance between subsequent landowners of the same land, RAA is not entitled to relief under Count IV.

## C. Public Nuisance

"Under Kentucky law, a public nuisance is a condition that is prejudicial to the health, comfort, safety, property, sense of decency, or morals of the citizens at large, resulting either from an act not warranted by law or from neglect of a duty imposed by law." *Anheuser–Busch, Inc. v. Ford Motor Co.* 1997 WL 594498, *5–6 (W.D.Ky. 1997), *citing Nuchols v. Commonwealth*, 312 Ky. 171, 226 S.W.2d 796, 798 (1950).

■■■ Unlike private nuisance, which is concerned with the invasion of an individual's right to use and enjoy her land, public nuisance is concerned with the invasion of rights common to the public. *Philadelphia Electric v. Hercules, Inc.*, 762 F.2d 303, 315 (3rd Cir.1985). Public nuisances are generally redressed by an action in the name of the governing body, or its authorized representative to restrain or abate the nuisance. 58 Am Jur 2s *Nuisances* § 246 (2002). For a private party to recover for a public nuisance, it must allege and show unusual or special damages, differing from those sustained by the community at large. *Id.* Therefore, the question before us is whether RAA has suffered some damage to a public right that is different.

■■ It is uncontroverted by the parties that the release or threat of release of hazardous waste, including asbestos, into the environment unreasonably infringes upon a public right—the right to clean air—and thus constitutes a public nuisance. We disagree. Although RAA has alleged disposal, dumping, abandonment, and discarding of hazardous substances, including asbestos, and their threatened and actual release into air, groundwater, land surface, and subsurface strata, it has not alleged that such release occurred in a public place, or threatened the public in any way. "A nuisance is public if it occurs in a public place, or where the public frequently congregates, or where members of the public are likely to come within the range of its influence.... However, a nuisance is not a public one if it occurs in a place of business to which an invitee has

no public right to go." 58 Am Jur 2d *Nuisances* § 38 (2002). 66 CJS *Nuisances* § 4 (1998).

Even assuming, *arguendo*, that the air pollution constitutes a public nuisance, RAA has not proven it suffered harm that is in some way different than that suffered by the public generally. An individual member of the public has no right to recover for the invasion of a public right, "unless his damage is in some way to be distinguished from that sustained by other members of the general public." *City of Monticello v. Rankin*, 521 S.W.2d 79, 80 (Ky.1975).

RAA alleges that the particular harm it suffered is "the entire cost of investigating and remediating the public nuisance created by LFG in order to protect the health and safety of persons on the Site." RAA's brief at 9. It is unclear from this statement exactly what right RAA claims has been damaged by LFG's actions. If RAA is alleging that LFG's actions harmed its right to breathe clean air, this harm is no different than the harm suffered by the public at large. If RAA alleges that it has suffered some special, pecuniary loss by virtue of having to clean up the environmental contamination, then it has been damaged only in the exercise over its private property rights over the Site, not in the exercise of its public right to breathe clean air. *Philadelphia Electric*, 762 F.2d at 316. As such, the proper cause of action would be for private nuisance, which we have already rejected.

Finally, even if RAA had a claim for public nuisance, which it does not, it has already been compensated for any cost of cleaning up the environmental contamination by the reduced price paid for the land. RAA can prove no circumstance under which it is entitled to relief under Count V.

### D. Negligence *per se*

Under Kentucky law, the violation of a statute, ordinance, or administrative regulation, may give rise to a civil cause of action for negligence *per se*. *Alderman v. Bradley*, 957 S.W.2d 264, 267 (Ky. App.,1997), *citing Britton v. Wooten*, 817 S.W.2d 443 (1991). See also *Real Estate Marketing, Inc. v. Franz*, 885 S.W.2d 921 (Ky.1994). However, the violation of a statute or regulation does not necessarily imply negligence. *Id.* In order for a violation to become negligence *per se*, the plaintiff must be a member of the class of persons intended to be protected by the regulation, and the injury suffered must be an event which the regulation was designed to prevent. *Id.* Only when both requirements are affirmatively demonstrated is negligence *per se* established with the applicable regulation or statute defining the relevant standard of care. *Id.*

First, RAA seeks to recover under KRS 446.070, which codifies common law negligence *per se* for violations of laws enacted by Kentucky's General Assembly. RAA asserts that LFG has violated KRS 77.155. That statute prohibits any person from discharging air contaminants or other materials which:

(1) exceed applicable emission standards established by regulation of the air pollution control board [and][e]xceeding these standards shall constitution a rebuttable presumption of violation of this standard; or

(2) cause injury, detriment, nuisance, or annoyance to any considerable number of persons of the public or which endanger the comfort, repose, health, or safety of any such persons or the public or which cause of have a natural tendency to cause injury or damage to business or property.

RAA also seeks to recover for common law negligence *per se*, for LFG's alleged

violations of administrative regulations. The authority to enforce KRS Chapter 77 in Jefferson County has been delegated to Air Pollution Control District (APCD) of Jefferson County. The RAA alleges that LFG's violation of APCD Regulation 2.03, addressing permit requirements for demolition and renovation projects, APCD Regulation 5.13, which control asbestos emissions from asbestos abatement projects, and APCD Regulation 5.04, which adopts in full the EPA regulations set forth in 40 CFR Part 6, Subpart M, form the basis of a common law negligence *per se* claim.

The Kentucky General Assembly adopted KRS Chapter 77 "for the purpose of providing a statutory scheme to regulate problems of air pollution in the various counties of the state." *Frederick v. Air Pollution Control District*, 783 S.W.2d 391, 393 (Ky.1990). The APCD regulations were adopted to accomplish the purposes of KRS Chapter 77. *See* APCD 1.02, § 1.60 ("regulation means a rule or order adopted by the Board pursuant to KRS Chapter 77 for the control or abatement of air contaminants within its jurisdiction.") The regulations are structured to prohibit the release of air contaminants above certain levels. APCD 2.03 §§ 4.1.1, 4.1.2.

The EPA regulations in 40 CFR Part 6, Subpart M, promulgate rules under section 112 of the Clean Air Act for asbestos emissions. National Emission Standards for Hazardous Air Pollutants; Asbestos NESHAP Revision, 55 Fed.Reg. 48,406 (Nov. 20, 1990). The purpose of the Clean Air Act is to protect and enhance the quality of the Nation's air resources, 42 U.S.C. § 7401(b), and to encourage and promote federal, state and local governmental action consistent with pollution prevention. 42 U.S.C. § 7401(c).

The harm for which RAA seeks to recover is the costs incurred in cleaning up asbestos and other environmental contamination on the Site. This is not the type of harm that the statutes and regulations intended to prevent. The purpose of the regulations and statutes cited by the RAA is to avoid air pollution and contamination. Moreover, the statutes and regulations were designed to protect the public from air contamination, not to protect property owners from incurring costs to clean up asbestos and other environmental contaminants. Therefore, even accepting all of RAA's allegations as true, its complaint does not establish that RAA suffered the type of harm that KRS Chapter 77, APCD and EPA regulations were intended to prevent. Nor does it prove that RAA was within the class of people the statutes and regulations intended to protect. Therefore, RAA is not entitled to relief under Count VI.

For the foregoing reasons, Counts IV, V, VI of RAA's First Amended Complaint cannot be maintained, and will be **DISMISSED** with prejudice by separate order.